**No. 24-3661**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

INTERNATIONAL PARTNERS FOR ETHICAL CARE, et al.,
*Plaintiffs-Appellants*,

v.

JAY INSLEE, Governor of the State of Washington,
in his official capacity, et al.,
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Washington
No. 3:23-cv-05736-DGE-RJB (Hon. Robert J. Bryan)

---

**EXCERPTS OF RECORD
Volume 1 of 1**

---

Nicholas Barry
Ian Prior
James K. Rogers
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave S.E., #231
Washington, DC 20003
Telephone: (202) 964-3721

Gene C. Schaerr
*Lead Counsel*
Edward H. Trent
SCHAERR|JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

| Document | File Date | USDC Dkt. No. | ER No. |
|---|---|---|---|
| Judgment in a Civil Case | 05/15/24 | 51 | ER-003 |
| Order Granting Defendants' Motion to Dismiss First Amended Complaint (J. Robert J. Bryan) | 05/15/24 | 50 | ER-004 |
| Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [excerpted] | 12/15/23 | 37 | ER-008 |
| Verified First Amended Complaint | 11/06/23 | 34 | ER-012 |
| Notice of Civil Appeal [exhibits omitted] | 06/08/24 | 52 | ER-090 |
| Civil Docket, No. 3:23-cv-05736-DGE, U.S. District Court, W.D. Washington | N/A | N/A | ER-093 |

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| INTERNATIONAL PARTNERS FOR ETHICAL CARE, INC., et al., | **JUDGMENT IN A CIVIL CASE** |
| Plaintiffs, | Case Number 3:23-cv-05736 DGE-RJB |
| v. | |
| JAY INSLEE, Governor of Washington, et al., | |
| Defendants. | |

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**. This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

THE COURT HAS ORDERED THAT:

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED.  This case is hereby DISMISSED WITH PREJUDICE

Dated May 15, 2024.

Ravi Subramanian
Clerk of Court

/s/Carrie Smith
Deputy Clerk

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| INTERNATIONAL PARTNERS FOR ETHICAL CARE, INC., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>JAY INSLEE, Governor of Washington, et al.,<br><br>                    Defendants. | CASE NO. 23-05736 DGE-RJB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 37). The Court has considered the documents filed in support of, and in opposition to, the motion, and the contents of the file.

The Washington State Legislature passed those laws that are of interest here: ESSB 5599, SHB 1406 and RCW 71.34.530. Plaintiffs disagree with those laws, as is their right. Plaintiffs' attempt to develop this lawsuit into a mechanism to attack those laws and declare them void, however, fails for lack of standing.

1    To have standing to prosecute such claims, Plaintiffs - Plaintiff parents, International

2  Partners for Ethical Care, Inc. ("IPEC"), and Advocates Protecting Children ("APC") - must

3  establish Article III standing.

4    To establish Article III standing, Plaintiff parents must plead an injury that is "concrete,

5  particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

6  by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiff

7  parents do not make such a showing.  (*See* Dkt. 37 at 6-10 for a listing of Plaintiffs' allegations.)

8  The Plaintiff parents fail to allege that the challenged laws actually injured them or will

9  imminently injure them in a concrete and particularized manner.  Their allegations rest on

10  speculation and conjecture, which is insufficient to confer standing.  *Lujan v. Defenders of*

11  *Wildlife,* 504 U.S. 555, 560 (1992).

12    Plaintiffs IPEC and APC must make a showing of "associational" standing or

13  "organizational"  standing.  "An association has standing to bring suit on behalf of its members

14  when its members would otherwise have standing to sue in their own right, the interests at stake

15  are germane to the organization's purpose, and neither the claim asserted nor the relief requested

16  requires the participation of individual members in the lawsuit."  *Friends of the Earth, Inc. v.*

17  *Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 181 (2000).  An organization has standing on its

18  own behalf if it can show: (1) that the defendant's actions have frustrated its mission; and (2) that

19  it has spent resources counteracting that frustration.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,

20  1018 (9th Cir. 2013).  An organization cannot manufacture an injury by incurring litigation costs

21  or simply choosing to spend money fixing a problem that otherwise would not affect the

22  organization at all.  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624

23

24

1  F.3d 1083, 1088 (9th Cir. 2010).  Plaintiffs IPEC and APC have not pled facts to justify a finding

2  of associational or organizational standing.

3        In analyzing standing issues in this case, it is interesting to note that, in the prayer of

4  Plaintiffs' Amended Complaint (Dkt. 34 at 64-67), Plaintiffs couched the harm suffered as

5  "threatened" in paragraphs 1, 2, 3, 4, 5, 6, and 7.  The Plaintiffs' "speculative chain of

6  possibilities" does not establish that injury based on these potential generalized threats is

7  "certainly impending." *Clapper* at 414.  The Plaintiffs' "threats" alone do not show standing.

8        Couching Plaintiffs' claims in terms of the United States Constitution (Due Process, Free

9  Exercise Clause, Free Speech, Vagueness, etc.) does not create standing when it is not

10  adequately pled.  References to the Constitution do not show standing here.

11        Plaintiffs' pleadings have not alleged facts showing standing to sue, and on that basis,

12  Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 37) should be

13  **GRANTED** under Fed. R. Civ. P. 12(b)(1) and (6).

14        Further, the Plaintiffs, in response to the Defendants' first motion to dismiss, filed an

15  Amended Complaint, which was the operative complaint for purposes of this motion.  Dkt. 34

16  and 46.  The Plaintiffs again have failed to articulate sufficient grounds to establish Article III

17  standing.  Accordingly, dismissal of this case should be with prejudice and without leave to

18  amend because further amendment would be futile.  *Lipton v. Pathogenesis Corp.*, 284 F.3d

19  1027, 1039 (9th Cir. 2002) (holding that amendment would be futile so that there was no need to

20  prolong the litigation by permitting further amendment).

21        **IT IS SO ORDERED**.  This case is hereby **DISMISSED WITH PREJUDICE**.

22        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

23  to any party appearing pro se at said party's last known address.

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3

1      Dated this 15th day of May, 2024.

2

3

4      ROBERT J. BRYAN
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT - 4

1                                                 The Honorable David G. Estudillo

2

3

4

5

6

7                      **UNITED STATES DISTRICT COURT**

8                  **WESTERN DISTRICT OF WASHINGTON**
                            **AT TACOMA**

9  INTERNATIONAL PARTNERS FOR        NO. 3:23-cv-05736-DGE
  ETHICAL CARE, INC., et al.,

10                             DEFENDANTS' MOTION TO
                 Plaintiffs,         DISMISS PLAINTIFFS' FIRST

11                           AMENDED COMPLAINT

12      v.

13  JAY INSLEE, Governor of Washington,     NOTE ON MOTION CALENDAR:
  et al.,                          February 2, 2024

14                   Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

ER-008

## I.     INTRODUCTION

Seeking to restrict the ability of transgender youth to access healthcare, Plaintiffs ask this Court to invalidate three Washington laws, but they lack standing and their claims fail as a matter of law. The Court should therefore dismiss this case.

Plaintiffs' complaint focuses on Engrossed Substitute Senate Bill 5599 and Substitute House Bill 1406, which are modest steps to address the crisis of transgender youth homelessness. Together, the bills give Washington's Department of Children, Youth, and Families (DCYF) an opportunity to offer services to transgender youth and their families before youth disappear from shelters to the streets. They do so by (1) requiring licensed shelters to notify DCYF when a youth runaway shows up, and (2) requiring DCYF to notify the youth's parents, offer to make referrals for behavioral health services, and offer services to help reunify the youth with their family within 72 hours of receiving notice. Plaintiffs also challenge a long-standing state law that allows adolescents to consent to outpatient mental health treatment. Plaintiffs' complaint fundamentally misrepresents these laws, which do not change standards of care or medical consent standards for minors (or anyone else) or coerce youth into receiving mental health treatment.

This Court should dismiss this case for two primary reasons. First, Plaintiffs lack Article III standing. None alleges their children are seeking gender-affirming care and have run away or that they have been affected by the law's modified notification requirements for licensed shelters and DCYF. And on the merits, the challenged laws simply do not do most of the things Plaintiffs say they do. The laws do not prevent parents from being notified when their children show up at a shelter. They do not permit DCYF to take custody of transgender youth or otherwise permit DCYF to interfere with any parent's custody. They do not require parents to refer to their children in a particular way, nor affect their rights to raise their children in accordance with their faiths. In short, Plaintiffs' principal allegations are wrong and their claims fail as a matter of law.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    chapter RCW 26.44.020." *Id.* In those instances, the law directed licensed shelters to notify the

2    Department, which in turn was required make a good faith attempt to notify the parent that it

3    received a report about a youth seeking shelter and offer services designed to resolve conflict

4    and reunify the family. *Id.*

5         In 2023, the Legislature enacted ESSB 5599 and SHB 1406, further amending

6    RCW 13.32A.082, as described below. Plaintiffs challenge these most recent amendments.

7         **1.    Engrossed Substitute Senate Bill 5599**

8         Unaccompanied youth homelessness poses serious threats to youth health and safety. As

9    reflected in the legislative history of ESSB 5599, LGBTQ+ youth are at greater risk of

10   experiencing some form of homelessness compared to their heterosexual or cisgender peers and

11   report experiencing higher rates of abuse and mental health issues.[2] Washington's Legislature

12   passed ESSB 5599 to address the health and safety risks to transgender or pregnant youth

13   experiencing homelessness. Engrossed Substitute S.B. 5599, § 1, 68th Leg., Reg. Sess. (Wash.

14   2023), *enacted as* 2023 Wash. Sess. Laws, ch. 408. Finding "that barriers to accessing shelter

15   can place a chilling effect on exiting unsheltered homelessness and therefore create additional

16   risk and dangers for youth," ESSB 5599 "remove[s] barriers to accessing temporary, licensed

17   shelter accommodations for youth seeking certain protected health care services." *Id.* As

18   discussed earlier, prior to ESSB 5599, licensed shelters generally had to contact parents within

19   72 hours of the youth's arrival unless there were compelling circumstances not to, e.g., when

20   notifying the parent would subject the minor to abuse or neglect. Fear of this notification

21   requirement caused some transgender youth to leave the safety of shelters or avoid them

---

24      [2] *See* Senate Human Services Public Hearing on ESSB 5599 (Feb. 6, 2023), at 1:19:15–1:19:40, *video recording by* TVW, https://tvw.org/video/senate-human-services-2023021142/?eventID=2023021142 (testimony noting LGBTQ+ youth account for at least 40% youth experiencing homelessness in King County); *see also* The Trevor Project, *Homelessness and Housing Instability Among LGBTQ Youth*, https://www.thetrevorproject.org/wp-content/uploads/2022/02/Trevor-Project-Homelessness-Report.pdf (last visited Dec. 12, 2023) (35% to 39% of transgender or nonbinary youth have experienced housing instability).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  altogether.[3] So ESSB 5599 specified that if a youth seeking protected health care services—

2  including gender-affirming care or reproductive health services—arrives at a licensed shelter,

3  the shelter must contact DCYF instead of contacting the youth's parents directly. *Id.* § 2. And

4  upon receipt of information from a shelter about a youth, DCYF must make a good faith attempt

5  to notify parents about the youth, offer to make referrals on behalf of the youth for behavioral

6  health services, and offer services to the youth and their families to help resolve family conflict

7  and reunify the family. *Id.* Thus, ESSB 5599 gives DCYF an opportunity to connect vulnerable

8  youth and their families to additional services.

9      **2.    Substitute House Bill 1406**

10      During the 2023 session, the Legislature unanimously passed SHB 1406. SHB 1406, in

11  part, gives DCYF a deadline to offer services under RCW 13.32A.082, requiring DCYF to

12  contact families and offer services, including family reconciliation services,[4] as soon as possible

13  but no later than three days (excluding weekends and holidays) following a report from a licensed

14  youth shelter about a youth seeking protected health services. Substitute H.B. 1406, § 2, 68th

15  Leg., Reg. Sess. (Wash. 2023), *enacted as* 2023 Wash. Sess. Laws, ch. 151.

16      SHB 1406 also allows a minor to stay in a licensed overnight youth shelter for up to 90

17  days if the shelter: (1) is unable to make contact with a parent despite the shelter's notification

18  efforts required by law; or (2) makes contact with a parent, but the parent does not request that

19  the child return home. SHB 1406, § 2. If a minor remains in a shelter under these circumstances,

20  _____

21      [3] *See* House Floor Debate on ESSB 5599 (Apr. 23, 2013), at 2:32:07–2:33:45, *video recording by* TVW, https://tvw.org/video/house-floor-debate-april-12-2023041141/?eventID=2023041141 (remarks of Representative Julio Cortes).

22      [4] "Family reconciliation services" means services provided by culturally relevant, trauma-informed community-based entities under contract with the department, or provided directly by the department, designed to

23  assess and stabilize the family with the goal of resolving crisis and building supports, skills, and connection to community networks and resources including, but not limited to:

24      (a) Referrals for services for suicide prevention, psychiatric or other medical care, psychological care, behavioral health treatment, legal assistance, or educational assistance;

25      (b) Parent training;
        (c) Assistance with conflict management or dispute resolution; or

26      (d) Other social services, as appropriate to meet the needs of the child and the family.
    RCW 13.32A.030(11); *see also* Declaration of Cristina Sepe Decl., Ex. H.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT
NO. 3:23-CV-05736-DGE

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**ER-011**

Judge David G. Estudillo

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| **International Partners For Ethical Care, Inc., Advocates Protecting Children, Parents 1A, 1B, 2A, 2B, 3A, 3B, 4A, 4B, 5A, and 5B,**[1] <br><br> Plaintiffs, <br><br> v. <br><br> **Jay Inslee**, Governor of Washington, in his official capacity; **Robert Ferguson**, Attorney General of Washington, in his official capacity; and **Ross Hunter**, Secretary of the Washington Department of Children, Youth, and Families, in his official capacity; <br><br> Defendants. | Case No. 3:23-cv-05736-DGE <br><br><br><br><br> **Verified First Amended Complaint** |

---

[1] Pursuant to the Court's order of October 25, 2023 [Doc. 32], the individual plaintiffs have been permitted to proceed under pseudonyms. Accordingly, only redacted verifications are being filed. If the Court wishes the individual plaintiffs to file unredacted verifications under seal, the plaintiffs will comply.

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

# INTRODUCTION

1.      This lawsuit against Washington state officials is about whether a minor child who is receiving or even just seeking so-called "gender-affirming treatment"—which includes services that alter body parts, prescribe life-altering medications, provide life-altering counseling, and other related things—showing up at a youth shelter, homeless shelter, or a host home, provides sufficient grounds to steamroll parental constitutional rights. Under recently amended Wash. Rev. Code § 13.32A.082, that answer is "yes." Under the United States Constitution, however, that answer is "no."

2.      This lawsuit challenges recent amendments to Wash. Rev. Code § 13.32A.082 through engrossed Senate Substitute Bill (ESSB) 5599 and Substitute House Bill (SHB) 1406 of the 2023 Regular Session of the 68th Legislature of Washington State, which is codified in relevant part at Revised Code of Washington (Wash. Rev. Code.) § 13.32A.082(3), and took effect July 23, 2023. The amended statute infringes on parental constitutional rights.

3.      The amended statute prevents or delays notice to parents of runaway children who express a desire to receive "gender-affirming treatment" and automatically involves the Department of Children, Youth and Families ("the Department"), even though no assessment or finding of abuse or neglect is made or even required.

4.      It authorizes the State to refer a minor for "behavioral health services" without defining what that entails, potentially meaning that a minor could receive—at least—mental health services that promote "gender transitions" and are services the parents would not

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 2 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1  endorse. And at worst, these undefined services could include "medical treatment" that the

2  parents would not authorize and would be permanently harmful to the minor. There is no

3  age minimum in the statute for such services.

4      5.     The amended statute also delays when parents can get their children back from

5  the State's control.

6      6.     In short, this amended statute allows shelters and homes to keep children at

7  locations without their parents' knowledge and refer those children for health interventions

8  without their parents' knowledge or approval. It does not require children to be returned on

9  any particular timetable or under any particular conditions but subject to unfettered discre-

10  tion of the Department.

11     7.     Additionally, this lawsuit challenges the constitutionality of RCW

12  § 71.34.530, which allows children as young as 13 to receive outpatient treatment without

13  a parent's or guardian's consent. In conjunction with SB 5599 and HB 1406, this statute

14  enables the state to interject itself between the parents and their child in directing certain

15  treatment. This violates deeply rooted parental rights.

16     8.     This suit is thus brought as a facial challenge against statewide officials, in their

17  official capacities, over these Washington statutes that discriminatorily deprive certain par-

18  ents—but not all parents—of their fundamental right under the U.S. Constitution to the

19  custody of their children, to refuse treatment for their children, as well as their rights to the

20  free exercise of religion, due process, and free speech. Plaintiffs bring this suit pursuant to 42

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 3 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1   U.S.C. § 1983 because Defendants are acting under color of state law in violating Plaintiffs'

2   rights under the First and Fourteenth Amendments to the U.S. Constitution.

3                                   **PARTIES**

4          9.      Plaintiff International Partners for Ethical Care, Inc., is a nonprofit organiza-

5   tion incorporated in the State of Illinois and recognized as a charitable or educational public

6   benefit organization under Section 501(c)(3) of the Internal Revenue Code. The organiza-

7   tion's "mission is to stop the unethical treatment of children by schools, hospitals, and mental

8   and medical healthcare providers under the duplicitous banner of gender identity affirma-

9   tion." Partners for Ethical Care Homepage, https://tinyurl.com/4nrp5vn9 (last visited

10  Aug. 15, 2023). Members of this organization include approximately two dozen parents in

11  the State of Washington, including at least one resident of the State of Washington who is a

12  parent in the state with a minor child who experiences gender confusion, has received coun-

13  seling for such, and is at risk of running away.

14         10.     Advocates Protecting Children is a nonprofit 501(c)(3) organization. It is

15  "dedicated to fighting the gender industry, and especially its predation on children in the

16  form of unethical social and medical transition for the sake of political and financial profit."

17  *About Us*, Advocates Protecting Children, https://tinyurl.com/3kun8vf2 (last visited Aug.

18  16, 2023).

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 4 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-015

1        11.     Parent 1A is a citizen of Washington and the mother of a 14-year-old biolog-

2  ical girl who struggles with gender identity[2] issues, who will be referred to as 1C.

3        12.     Parent 1B is the husband of Parent 1A and father of 1C. He is a citizen of

4  Washington.

5        13.     Unbeknownst to her parents, 1C began expressing signs of gender dysphoria

6  at school. Then, without notice to her parents, 1C's school encouraged her to socially "tran-

7  sition" to being recognized as a boy, including through meetings with a school counselor

8  that lasted for two and a half months. Upon learning of 1C's struggles, 1A and 1B sought

9  proper treatment for 1C and removed her from public school. Her gender confusion has

10  eased some.

11        14.     Given 1C's vulnerability, 1A and 1B are concerned that she will again be pres-

12  sured at school to again adopt a gender identify inconsistent with her biological sex and that

13  the information will again be kept from 1A and 1B. Previously, such pressure created tension

14  between 1A and 1B and their child, creating a situation where 1C was at risk of running away

15  over a disagreement of her gender identity. Should that occur again, 1C would be a child

16  subject to the provisions of the amended statute and 1A and 1B would be denied information

17  on 1C's whereabouts and her condition, and 1A and 1B would be left without input for the

---

[2] Plaintiffs use of the term "gender identity" in this Complaint is strictly for ease of reference, since it is a concept assumed by the legislation challenged here. There is no scientific defini-tion for "gender identity," and Plaintiffs in no way endorses the existence of a gender identity for anyone; it can neither be proven nor disproven.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 5 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1  Department to refer 1C for behavioral health services that promote an alternate gender iden-

2  tity contrary to 1A and 1B's beliefs and desires for their daughter.

3      15.    For these reasons, the passage of the FRA amendments has caused Parent 1B

4  daily fear.

5      16.    Additionally, the passage of the FRA amendments has caused 1A to be hesitant

6  to discipline 1C for fear it will cause a rift that others might take advantage of. The FRA

7  amendments thus make it very difficult to parent, leaving 1A uncomfortable every time she

8  has a disagreement with 1C.

9      17.    1A is in fear that 1C could find other adults or a family of a friend, for instance,

10  who might support her disagreement with 1A, disagree with 1A's beliefs about gender, and

11  encourage 1C to "re-transition." The FRA amendments function to undermine 1A's author-

12  ity as a parent, making it very easy for others to create a wedge between her and her child.

13  By putting all the cards in the hands of a child who isn't qualified to make important decisions

14  yet, the FRA amendments make it very hard for 1A to parent and protect 1C.

15      18.    1A and 1B fear that 1C could seek to "transition" again and be incentivized

16  to run away given that the FRA amendments provide her an option to go around her parents.

17  They also fear that 1C being referred for "behavioral health services" while at a shelter would

18  make it much harder for them to parent her and would interfere with the relationship they

19  have built since removing her from her old school.

20      19.    If 1C were to run away, the provisions of the amended FRA would greatly

21  harm 1A and 1B's ability to care for and raise their daughter by allowing state actors and

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 6 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-017

1    those they authorize to promote ideas that are contrary to what 1A and 1B believe and know

2    is best for 1C, or by forever altering 1C physically, or both.

3         20.    1A and 1B also fear that if the Department were to get custody of 1C should

4    she run away, the Department would delay or even prohibit them from getting their daughter

5    back if they did not support or affirm a transgender ideology or some form of "gender-

6    affirming treatment," or use the pronouns or name the Department required.

7         21.    Parent 2A is the mother of two children who struggle with gender identity

8    issues: 2C, a biological girl suffering gender confusion who recently turned age 18, and 2D,

9    another biological girl suffering gender confusion, who is age 13. 2A is a citizen of Washing-

10   ton.

11        22.    Parent 2B is the husband of Parent 2A, the father of 2C and 2D, and a citizen

12   of Washington.

13        23.    The school of 2D socially transitioned her without her parents' knowledge.

14        24.    The older sister, 2C, threatened to take 2D to a "safe place" because 2B would

15   not use 2D's preferred pronouns. Both 2C and 2D have accused 2A and 2B of being "tran-

16   sphobic."

17        25.    2D still has her chosen name up in her room and "identifies herself as male"

18   on a popular tech platform profile.

19        26.    Parents 2A and 2B live in fear that 2D will see SB 5599 as providing a way for

20   her to get what she wants without parental consent and run away to get the "treatment" she

21   desires.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 7 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    27.    Parents 2A and 2B also do not know, should their minor daughter run away

2    to a shelter, when or if they would be allowed to reunite with their daughter unless they

3    supported or affirmed the State's preferred gender ideology, including calling their daughter

4    by a chosen, nonbirth name and using opposite-sex or non-biologically aligned pronouns.

5    28.    Because of the FRA amendments, Parent 2A is afraid to use 2D's given name

6    and pronouns that match her biology in most public places, so 2A just does not use 2D's

7    given name in public or use any pronouns when referring to her, with the exception of her

8    current (new) school community or extended family.

9    29.    Also because of the FRA amendments, Parents 2A and 2B avoid talking about

10   gender at all with 2D or near her.

11   30.    Every time 2D leaves the house with 2C, especially if it is not planned well in

12   advance, 2A and 2B fear because of the FRA amendments.

13   31.    Parent 3A is the mother of 3C, a 14-year-old biological boy who struggles

14   with gender identity issues. 3C is also autistic. 3A is a citizen of Washington.

15   32.    Parent 3B is the husband of Parent 3A and the father of 3C. He is a citizen of

16   Washington.

17   33.    3A and 3B are Roman Catholic. They believe in the teachings of the Roman

18   Catholic Church on gender. They are skeptical of gender ideology and their religious beliefs

19   inform their understanding that a boy is a male child with any personality, regardless of

20   whether his personality conforms to stereotypes of masculinity.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 8 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-019

34.     3C is in a sometimes fragile state as a young autistic adolescent. He is frequently ambivalent about his gender. For example, recently he indicated he was going to stop "identifying as a girl," but then shortly thereafter he reversed himself after hanging out with his friends.

35.     His gender issues are tied up in a very negative idea of men and maleness- it sometimes seems that it's not that he wants to be a girl so much as he doesn't want to be associated with maleness. As he was bullied by boys at school, he doesn't want to be like the boys who bullied him. Additionally, his therapist believes that 3C is fearful of growing up.

36.     3C has been experimenting with a new name and female pronouns with friends and at school.

37.     His gender confusion was accelerated by school staff who repeatedly asked him if he wanted another name and pronouns, to which he initially resisted but eventually relented.

38.     Because a friend's family encouraged 3C's older brother to run away and live with them when he was suffering from gender confusion since 3A and 3B did not believe that a "trans identity" was authentic and healthy for him, 3A and 3B fear that 3C might run away.

39.     Due to 3C's autism and being a minor, should he run away, he would be incapable of meaningfully consenting to "appropriate behavioral health services," especially those that would enforce a "transgender identity" or provide irreversible medical procedures.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 9 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-020

40.     If 3C were to run away and receive counseling to affirm a "transgender iden-tity," or receive medical "treatment" to make him look more like a biological girl, it would only make it more difficult for 3A and 3B to keep or rebuild his trust. 3C is not able to give meaningful informed consent to life altering treatments. The fact that he has autism only makes rebuilding trust when someone else damages it by giving him conflicting messages on what is right and wrong that much more difficult.

41.     3A and 3B also fear that should 3C run away to a shelter, they would be forced to accept "gender-affirming treatment" for him or socially affirm him as if he were female, such as using a female name or pronouns, just to be allowed to bring him home. SB 5599 provides state actors with arbitrary discretion to determine what 3A and 3B would have to do to get their son back.

42.     Parent 4A is the mother of three children: 4C, who is an eight-year-old girl, 4D, a seven-year-old boy, and 4E, a 17-year-old boy. 4A is a citizen of Washington.

43.     Parent 4B is the husband of 4A and the father of 4C, 4D, and 4E. He is a citizen of Washington.

44.     4A and 4B are non-denominational Christians who believe the Bible is the Word of God and, as such, is authoritative on every issue to which it speaks. They believe the topics on which the Bible provides teachings, including gender.

45.     Each of 4A and 4B's children are part of social activities where they could be especially at risk of pressure to take on an alternate gender identity from their actual sex.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 10 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-021

46.     Parents 4A and 4B fear that their children, if they succumb to that pressure, could run away knowing that 4A and 4B's religious beliefs do not support the idea that a child can change from being a boy to a girl or from being a girl to a boy.

47.     And so 4A and 4B fear that because of the FRA amendments and their children's realization that 4A and 4B believe differently, their children would run away to receive the counseling and "medical treatment" they confusingly thought they wanted. 4A and 4B would be kept entirely out of the process.

48.     Parent 5A is the father of a 15-year-old daughter, 5C, both residents of Washington. 5A has primary legal and physical custody of 5C.

49.     Parent 5B is also a resident of Washington, is the stepmother of 5C, and is married to 5A. 5C primarily resides in the home of 5A and 5B.

50.     5C began suffering from rapid onset gender dysphoria when she was 12. 5A and 5B do not affirm 5C's claim to be a boy.

51.     At the age of 12, 5C was hospitalized for suicidality. The hospital asked permission to put her on puberty blockers, but 5A and 5B declined.

52.     5C's school district transitioned her behind her parents' back, starting in the 8th grade. She is now in the 10th grade. She still "identifies as transgender" at school.

53.     When 5C was 13, she got upset when 5B called 5C by her birth name.

54.     Later, at age 13, 5C ran away from home.

55.     Since turning 13, 5C has had subsequent hospitalizations, but has refused to talk to 5A and 5B about the details.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 11 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-022

1    56.    5C is now in the 10th grade. She still identifies as "transgender" at school.

2    57.    5C currently sees a school counselor. That counselor has challenged 5A for

3    not supporting 5C in "transitioning" and the counselor has gotten upset at 5A for not calling

4    5c by her preferred pronouns. 5C has also in the past seen therapists for a couple of years,

5    and she has had conversations with numerous therapists and behavioral health specialists

6    about gender identity and "transitioning."

7    58.    5A and 5B fear that if 5C runs away again, she will rely on the FRA amend-

8    ments to seek "gender-affirming treatment" of some sort and receive "behavioral health ser-

9    vices" without 5A's consent, permanently harming her daughter.

10    59.    Defendant Jay Inslee is the Governor of the State of Washington. As such, he

11    must enforce the laws of that state. *See* Wash. Const. art. III, § 5. Governor Inslee also su-

12    pervises the Department Secretary who administers the amended statute, and the Governor

13    has the authority to remove the Secretary, as discussed below.

14    60.    Governor Inslee signed SB 5599 on May 9, 2023, and SHB 1406 on April 20,

15    2023.

16    61.    Governor Inslee is sued in his official capacity.

17    62.    Defendant Robert Ferguson is the Attorney General of Washington. As such,

18    he is responsible for the legal defense of state statutes, including the amended Wash. Rev.

19    Code § 13.32A.082 and § 71.34.530. *See* Wash. Const. art. III, § 1; Wash. Rev. Code

20    § 43.10.

21    63.    Attorney General Ferguson is sued in his official capacity.

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    64.    The amended Wash. Rev. Code § 13.32A.082 is administered by the Wash-
2    ington State Department of Children, Youth, and Families ("the Department" or "DCYF").

3    65.    The Department is an agency in the executive branch of the State of Washing-
4    ton. Wash. Rev. Code § 43.216.015.

5    66.    Defendant Ross Hunter is Secretary of the Washington State Department of
6    Children, Youth, and Families.

7    67.    Secretary Hunter "has the complete charge and supervisory powers over the
8    department." Wash. Rev. Code § 43.216.025; *see also Matter of W.W.S.*, 469 P.3d 1190,
9    1204 (Wash. Ct. App. 2020) (outlining the Secretary's vast authority over the Department).

10   68.    Secretary Hunter has authority over the Assistant Secretaries who issued the
11   implementation Memo discussed below.

12   69.    Secretary Hunter was appointed by Governor Inslee, with the consent of the
13   Washington State Senate, and serves at the pleasure of the Governor. *See* Wash. Rev. Code
14   § 43.216.025.

15   70.    Secretary Hunter is sued in his official capacity.

16                        **JURISDICTION AND VENUE**

17   71.    This case presents federal questions arising under the Constitution of the
18   United States and seeks relief for the deprivation of federal rights under color of state law.
19   This Court accordingly has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    72.    This Court has authority to award Plaintiffs declaratory relief pursuant to 28

2    U.S.C. § 2201, and injunctive relief under 28 U.S.C. §§ 1343, 2202, and Fed. R. Civ. P.

3    65.

4    **73.**    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

5    substantial part of the facts complained of herein occurred within this District and because

6    this District is the seat of government of the State of Washington and therefore Defendants

7    are domiciled in this District.

8                                    **FACTUAL BACKGROUND**

9    *Statutory Scheme*

10    74.    During its most recent session, the Washington State Legislature enacted two

11    statutes that amended Wash. Rev. Code § 13.32A.082, the Family Reconciliation Act

12    ("FRA"). *See* 2023 Wash. Legis. Serv. Ch. 151 (SHB 1406); 2023 Wash. Legis. Serv. Ch.

13    408 (ESSB 5599). Both acts went into effect on July 23, 2023.

14    75.    These two bills ("the FRA amendments") modified the rights and procedures

15    of Washington state law concerning parents in the upbringing and custody of their children.

16    76.    In Washington, the baseline rule governing parental rights when children go

17    to a shelter is that when a shelter "knows at the time of providing the shelter that the child

18    is away from a lawfully prescribed residence or home without parental permission, it must

19    contact the youth's parent within 72 hours, but preferably within 24 hours, following the

20    time that the youth is admitted to the shelter or other licensed organization's program."

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 14 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-025

1    Wash. Rev. Code § 13.32A.082(1)(b)(i). Further, that "notification must include the where-

2    abouts of the youth, a description of the youth's physical and emotional condition, and the

3    circumstances surrounding the youth's contact with the shelter or organization." *Id.*

4        77.    Thus, under this baseline rule, no later than 72 hours after a minor shows up

5    at a shelter, parents must be told exactly where the child is, as well as how the child is doing,

6    and how the child ended up at the shelter. The parents are free to go pick up their child and

7    take him or her home.

8        78.    The only exception to this statutorily imposed duty of shelters is that "[i]f there

9    are compelling reasons *not* to notify the parent, the shelter or organization must instead

10   notify the department"—that is, the state Department of Children, Youth and Families. *Id.*

11   (emphasis added).

12       79.    Additionally, "compelling reasons" were previously defined as "circumstances

13   that indicate that notifying the parent or legal guardian will subject the minor to abuse or

14   neglect as defined in [another code section]." *Id.* § 13.32A.082(2)(c).

15       80.    But SB 5599 expanded the definition of "compelling reasons" to now also

16   include "[w]hen a minor is seeking or receiving protected health care services." *Id.*

17   § 13.32A.082(2)(c)(ii). And "'protected health care services' means 'gender-affirming treat-

18   ment.'"[3] *Id.* § 13.32A.082(2)(d).

---

[3] "Gender-affirming treatment" is defined as "a service or product that a health care provider
. . . prescribes to an individual to support and affirm the individual's gender identity." Wash.
Rev. Code § 74.09.675(3). This would include physical or mental health services, *id.*
§70.02.010(15), including "facial feminization surgeries and facial gender-affirming treat-
ment, such as tracheal shaves, hair electrolysis, and other care such as mastectomies, breast

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 15 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-026

81.     As a result of this change, "compelling reasons" are automatically present whenever a minor shows up at a shelter seeking "gender-affirming treatment" even though a parent's refusal to "affirm" a child's gender dysphoria or provide "gender-affirming treatment" is *not* in fact abuse or neglect.

82.     Children run away for a host of reasons, including much less serious ones, such as:

- "birth of a new baby in the family;"

- "family financial worries;"

- "problems at school;"

- "peer pressure;"

- "failing or dropping out of school;"

- "death in the family;"

- "parents separating or divorcing or the arrival of a new stepparent;"

- "kids . . . drinking alcohol or taking drugs,"

*Running Away*, Nemours KidsHealth (June 2018), https://tinyurl.com/5n6vjpev (medically reviewed by Steven Dowshen, MD).

83.     As modified by the FRA amendments, the statute now reads as follows, with the SB 5599 amended provisions bolded and the SHB 1406 amended provisions italicized:

---

reductions, breast implants, or any combination of gender-affirming procedures, including revisions to prior treatment, when prescribed as gender-affirming treatment," *id.* § 74.09.675(2)(b).

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 16 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-027

1  (3) (a) When the department receives a report under subsection (1) of this
2  section, it shall make a good faith attempt to notify the parent that a report
3  has been received and offer services *to the youth and the family* designed to re-
4  solve the conflict, *including offering family reconciliation services*, and accom-
5  plish a reunification of the family. *The department shall offer services under this*
6  *subsection as soon as possible, but no later than three days, excluding weekends and*
7  *holidays, following the receipt of a report under subsection (1) of this section.*
8  (b) When the department receives a report under subsection (1) of this section
9  for a minor who is seeking or receiving protected health care services, it shall:
10 (i) Offer to make referrals on behalf of the minor for appropriate behavioral
11 health services; and
12 (ii) Offer services designed to resolve the conflict and accomplish a reunifica-
13 tion of the family.

14 Wash. Rev. Code § 13.32A.082(3) (emphasis added).

15 *1. Notice to Parents Now Not Required or At Least Delayed*

16 84.    As amended, the statute's plain language exempts from the prompt parental-

17 notice requirement those cases in which minors are seeking or receiving "protected health

18 care" services and provides no time period for notifying parents or obtaining their consent

19 before referring the minor for "behavioral health services."

20 85.    Paragraph 3 covers "compelling reasons" with Paragraph 3(a) being general but

21 Paragraph 3(b) being specific to minors seeking "gender-affirming treatment." Both require plans

22 for reunification but use different language (*reconciliation* versus *reunification*) and Paragraph

23 3(b) provides no time period for the provision of the services set forth in the Paragraph. Interpreting

24 Paragraph 3(a) and 3(b) as overlapping would violate "the rule against surplusage, which requires

25 [a] court to avoid interpretations of a statute that would render superfluous a[ny] provision"

26 thereof. *Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp.*, 249 P.3d 607, 620 (Wash. 2011).

27 86.    And since the relationship between 3(a) and 3(b) is at least ambiguous, then

28 under the rule of statutory construction that "a specific provision controls over one that is

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    general in nature," *Miller v. Sybouts*, 645 P.2d 1082, 1084 (Wash. 1982), the redundancies

2    and potential conflicts are ironed out by applying 3(b) to minors seeking "gender-affirming

3    treatment" and 3(a) to all other minors who trigger "compelling reasons."

4        87.    These interpretive principles are controlling, because when construing a state

5    statute, federal courts "follow that state's rules of statutory interpretation." *Planned*

6    *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 930 (9th Cir. 2004); *accord State Char-*

7    *tered Banks in Wash. v. Peoples Nat. Bank of Wash.*, 291 F. Supp. 180, 196 (W.D. Wash.

8    1966) ("[This court] must . . . apply the general rules of statutory interpretation that the

9    courts of Washington use.").

10       88.    Additionally, when statutory language is unclear, conflicting, or silent, Wash-

11   ington state courts resort to legislative history. *See Gorre v. City of Tacoma*, 357 P.3d 625,

12   631 (Wash. 2015) ("We must therefore resort to other aids of statutory interpretation to

13   resolve th[e] [statutory] ambiguity. And one of those aids—legislative history—ends our

14   analysis." (citation omitted)); *see also In re Marriage of Kovacs*, 854 P.2d 629, 634 (Wash.

15   1993) ("[I]n determining the legislative purpose and intent the court may look beyond the

16   language of the Act to legislative history.").

17       89.    The legislative history strongly indicates that the Washington State Legislature

18   intended to deprive parents of their rights when their child presents at a shelter receiving or

19   seeking "gender-affirming treatment." As legal counsel for the Committee explained, "Un-

20   der this bill, they [*i.e.*, personnel at a shelter or from the Department] do not need to contact

21   the parent if a compelling reason exists—which includes but is not limited to notifying the

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 18 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-029

1   parent will subject the minor to child abuse and neglect or the minor is seeking protected

2   health care services." *Hearing on SB 5599 Before the S. Hum. Servs. Comm.*, 68th Leg., 2023

3   Sess. (Feb. 14, 2023) (statement of Alison Mendiola, Coordinator & Counsel for the Comm,

4   at 28:44-29:03), *available at* https://tinyurl.com/mry8dwta

5       90.     Remarkably, under the text and legislative history of SB 5599, it appears that

6   parents of children who seek or receive protected health services will not receive notification.

7       91.     Nevertheless, Secretary Ross's subordinates insist that SB 5599 would not op-

8   erate entirely in this manner, despite the statute's plain text and the statements above and

9   below from the statute's sponsors and legislative supporters.

10      92.     Natalie Green is Assistant Secretary of Child Welfare Field Operations at the

11   Department, and Steve Grilli is Assistant Secretary of Partnership, Prevention, and Services

12   at the Department. *See Our Leadership*, Wash. State Dep't of Children, Youth & Families,

13   https://tinyurl.com/9ryktvwh (last visited Aug. 15, 2023).

14      93.     On July 21, 2023, Green and Grilli issued a Policy Memo in which they

15   claimed that, in implementing SB 5599 regarding a homeless youth seeking "gender-affirm-

16   ing treatment," a caseworker must "[m]ake a good faith attempt to contact the youth's par-

17   ent or legal guardian to offer FRS [*i.e.*, family reconciliation services] to resolve the conflict

18   and accomplish a reunification of the family." Natalie Green & Steve Grilli, *Policy Memo:*

19   *Changes to 3100, Family Reconciliation Services Policy*, Wash. Dep't of Children, Youth &

20   Families 2 (July 21, 2023), https://tinyurl.com/u5fzeu2x.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 19 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-030

94.     The Memo goes on to specify that "[w]hen making a good faith attempt, caseworkers must at minimum do the following," and specifies as two of the items on that list, "[a]sk the youth or shelter to provide contact information for the youth's parents or legal guardians, if known," and, "[c]ontact the parents or legal guardians as outlined in the current FRS policy, *if* contact information is provided." *Id.* (emphasis added). Should the child not provide such contact information, the Memo indicates that no notification will be provided to the parents. No independent efforts to identify and notify the parents need be made, nor is any timeline for making contact provided.

95.     The Memo provides no explanation for why the lawmakers quoted below who wrote, sponsored, and supported SB 5599, as well as the lawmakers quoted below who opposed the bill, were all of one mind regarding the bill's effect of denying parents notification when their children are seeking or receiving protected health services. Nor does the Memo explain away the clear meaning of the bill's words, which contradict the Memo.

96.     Even if one reads the statute to violate the general-specific and anti-surplusage canons such that Subsection 3(a) also applies to everyone under Subsection 3(b), the FRA amendments still change the timing of the notice to parents in a way that substantially impairs parental rights. Before the amendments, a parent of a child receiving "gender-affirming treatment" who showed up at a shelter without providing personnel with any reason to suspect abuse or neglect would receive notification within 72 hours. *See* Wash. Rev. Code § 13.32A.082(1)(b)(i).

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-031

1    97.    But now, under the revised Subsection 3(a), assuming it even applies to these

2    parents, the Department does not have to provide parental notification until three business

3    days after they receive a report from the shelter. And the shelter does not have to provide a

4    report to the Department until 72 hours have elapsed (if there is even any time requirement

5    at all in a compelling reasons scenario—the statute is not clear).

6    98.    Thus, SB 5599 and SHB 1406 change the notification time from 72 hours to

7    as many as ten days—an additional week without notification can be an eternity for parents

8    whose child has run away.

9    99.    This is illustrated by the following scenario. Suppose a child shows up at a

10    shelter, triggering Paragraph 3, on the Monday morning before Thanksgiving. This starts

11    the 72-hour clock for the shelter to inform the Department. But the expiration of those 72

12    hours falls on Thanksgiving Day. The next day is also a holiday in Washington—Native

13    American Heritage Day. The two days after that are a Saturday and Sunday. So the start of

14    the three business days with which the Department has to notify parents is not until Monday

15    morning, meaning by Thursday morning—10 days after the child showed up at the shel-

16    ter—the Department would need to give notice to the parents.

17    100.    Hence, the FRA Amendments add three to seven actual days to the notice

18    period—stretching it from 72 hours to as much as 240 hours. It would thus not be correct

19    to read the amended FRA as only changing who reports to parents and nothing else. At the

20    very least, the timing allowed for parental notification for parents of minor children arriving

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 21 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    at a shelter and seeking or receiving "protected health services" has now been doubled or

2    more than tripled. And at worst, no notification is required.

3    *2. If Given Notice, Parents Mostly Kept in the Dark*

4        101.    Next, even if Subsection 3(a) applies to parents with minors seeking or receiv-

5    ing protected health services, the statutory changes also alter the level of detail that must be

6    provided to parents. Previously, in the absence of abuse or neglect, the shelter would provide

7    the child's location, condition, and circumstances for arriving at the shelter. *See* Wash. Rev.

8    Code § 13.32A.082(1)(b)(i).

9        102.    But after the FRA amendments, for minors seeking "protected health care ser-

10   vices," all the Department must provide in its notice about the child is that the Department

11   received a report from a shelter. *Id.* § 13.32A.082(3)(a). Nothing requires the Department

12   to provide the location, condition, or circumstances. Thus, parents will not know where their

13   child is or how he or she is doing, and without the former, they cannot go and get the child.

14   So this change in the law deprives certain parents—for whom there is no suspicion of neglect

15   or abuse—of crucial knowledge about their child and the ability to get their child from the

16   shelter.

17   *3. Parents Bypassed in Treatment for Child*

18       103.    The changes by the FRA amendments also remove from parental control

19   choices about treatment for a child under Paragraph 3(b)(i). This provision now enables the

20   Department to "[o]ffer to make referrals on behalf of the minor for appropriate behavioral

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 22 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-033

1  health services." *Id.* § 13.32A.082(3)(b)(i). Nowhere is "appropriate behavioral health ser-

2  vices" defined in the statute or elsewhere in Washington state law, but in context it can only

3  mean services to affirm a gender identity contrary to the child's biological sex.

4      104.   This statutory silence requires a resort to legislative history. *See In re Marriage*

5  *of Kovacs*, 854 P.2d 629, 634, 636 (Wash. 1993) ("[I]n determining the legislative purpose

6  and intent the court may look beyond the language of [an] Act to legislative history. . . .

7  [T]he remarks of . . . sponsor[s] and drafter[s] of . . . bill[s], are appropriately considered to

8  determine th[at] purpose . . . ."). And that history indicates that the legislation was intended

9  to empower the State or its agents to displace a child's parents and authorize "gender-affirm-

10  ing treatment" for minors who show up at a shelter seeking "protected health services," as

11  explained by SB 5599's sponsor.

12      105.   Washington State Senator Marko Liis, a sponsor of SB 5599, explained during

13  a legislative hearing on his bill:

14        What this bill speaks to is when a young person is seeking certain essential health care
15        services, ... to make critical decisions about their future or seeking *gender-affirming*
16        *care* in the face of opposition and hostility from their family. In those cases where *that*
17        *reunification process would separate that vulnerable young person from the health care*
18        *that they're entitled to...* When a family is standing between their young person and
19        essential health care services there, and we need to focus on the essential needs of the
20        young person. In short, *they're getting the care they deserve.*

21  Senate Floor Debate on SB 5599 (Mar. 1, 2023) (statement of Sen. Marko Liias, Sponsor,

22  at 1:24:48–1:26:00) (emphasis added), *available at* https://tinyurl.com/75jaep4t.

23      106.   And Governor Inslee, whose signature made the FRA amendments law, de-

24  clared that the amendments "support these youth as they *access* gender-affirming treatment."

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 23 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-034

1  Associated Press, *Trans Minors Protected from Parents under Washington Law*, KNKX Pub.

2  Radio (May 9, 2023), https://www.knkx.org/law/2023-05-09/trans-minors-protected-

3  from-parents-under-washington-law (emphasis added).

4      107.   In sum, the amended FRA now allows the State, over parents' objections or

5  without their knowledge, to send a minor down a road of "gender-affirming treatment" that

6  could cause permanent and irreversible sterilization and sexual dysfunction, as well as other

7  devastating physical and psychological consequences.

8      108.   Even if "behavioral health services" is narrowly interpreted to only mean men-

9  tal therapy, the damage can be long lasting or permanent. That is because approximately 4

10  of every 5 minor children with gender dysphoria see it resolve, ultimately accepting their

11  biological sex, *if not affirmed as the opposite sex. See* Riittakerttu Kaltiala-Heino et al., "Gender

12  Dysphoria in Adolescence: Current Perspectives," 9 Adolesc. Health Med. Ther. 31 (2018).[4]

13  Thus, by referring minor children even to counseling that affirms they are something other

14  than their biological sex, the Department is likely cementing in—perhaps for a lifetime—a

15  struggle and confusion that the overwhelming majority of children would otherwise mature

16  out of.

17      109.   Nor, for at least two reasons, does it mitigate this harm that there is an existing

18  law that essentially emancipates children from parental control and notice regarding outpa-

19  tient services, such as mental counseling. *See* RCW § 71.34.530 (authorizing that "[a]ny

---

[4] Available at https://www.dovepress.com/gender-dysphoria-in-adolescence-current-per-spectives-peer-reviewed-fulltext-article-AHMT.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 24 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1  adolescent [age 13 years or older] may request and receive outpatient treatment without the

2  consent of the adolescent's parent").

3    110.  First, the FRA amendments do not specify an age minimum for the referral.

4  Thus, the amended FRA allows the State to refer children of any age for "behavioral health

5  services." That is true under the specific-general canon of construction noted above, given

6  the amended FRA applies specifically to children in a shelter who are seeking or receiving

7  "gender-affirming treatment," whereas RCW § 71.34.530 deals generally with all children

8  in the state. *See Waste Mgmt. of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wash. 2d

9  621, 630, 869 P.2d 1034, 1039 (1994) ("A specific statute will supersede a general one

10 when both apply."). That is also true under the canon of construction that a later statute

11 controls over an earlier statute. *See, e.g., Food & Drug Admin. v. Brown & Williamson To-*

12 *bacco Corp.*, 529 U.S. 120, 143 (2000) ("[A] specific policy embodied in a later . . . statute

13 should control our construction of the earlier statute, even though it has not been expressly

14 amended.").

15    111.  Second, the amended FRA now interjects the State between parents and chil-

16 dren when it would otherwise not have authority to be involved. Normally, the Department,

17 absent a finding of abuse or neglect, cannot reach out to a child and refer them for "behav-

18 ioral health services." In fact, the Department cannot even do that with runaways in a shelter,

19 unless "compelling reasons" are triggered, which used to be abuse or neglect prior to the

20 FRA amendments. So, the amended FRA has changed the status quo in a way that is harmful

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1  to parental rights (and to children), facilitating, if not implicitly pressuring, minors to get

2  these services without parental involvement.

3  *4. Timing of Child's Return Significantly to Indefinitely Delayed*

4          112.    Finally, the FRA amendments significantly delay the return of a child back to

5  his or her parents. That is not only because parents will not know their child's location so

6  they can pick the child up, but also because nothing in these statutory changes requires the

7  Department to return the child, and certainly not on any specific timeline. All that Paragraph

8  3(b)(ii) does is require the Department to "[o]ffer services designed to resolve the conflict

9  and accomplish reunification of the family." But, until that conflict is resolved—to whose

10  satisfaction the statute does not say, but likely, to the Department's—reunification will not

11  be required, meaning the Department will be under no mandate to return the child. In short,

12  the Department is no longer required to accomplish reunification within three days, but in-

13  stead need only offer a *plan* for reunification on no specific timetable. *Id.*

14  § 13.32A.082(3)(b)(ii).

15          113.    Here again, the legislative history supports this reading of the statutory text.

16  Sponsor Sen. Liias said the law is for "those cases where that reunification process would

17  separate that vulnerable young person from the health care that they're entitled to . . . . When

18  a family is standing between their young person and essential health care services there, and

19  we need to focus on the essential needs of the young person. In short, they're getting the

20  care they deserve. And *then* focus on the important reunification process." Senate Floor De-

21  bate on SB 5599 (Mar. 1, 2023) (statement of Sen. Marko Liias, Sponsor, at 1:24:48–

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 26 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-037

1   1:26:00). In other words, when the Department can provide the services it thinks the child

2   needs without parental consent, it will attempt reunification at some point following those

3   services. But the statute is silent about what triggers reunification and when that would occur.

4   And that silence creates a serious additional risk that parent's constitutional rights will be

5   impaired.

6       114.   Additionally, the legislative history indicates that is exactly what the propo-

7   nents of the FRA amendments intended. During the legislative debates, proponents of the

8   bill frequently framed recalcitrant parents as the problem SB 5599 was designed to solve. On

9   the Senate floor, for example, Sponsor Sen. Marko Liias referred to the "opposition and

10  hostility from their family" children seeking these services would face and how "a family is

11  standing between their young person and essential health care services." Senate Floor Debate

12  on SB 5599 (Mar. 1, 2023) (statement of Sen. Marko Liias, Sponsor, at 1:24:48–1:26:00);

13  *see also* Taija Perry Cook & Joseph O'Sullivan, *WA Transgender Youth Bill Targeted in Na-*

14  *tional Culture War*, Crosscut (May 1, 2023), https://tinyurl.com/mva94s (quoting Sen.

15  Liias as stating that "family members are actively contributing to the unsafe circumstances

16  that led them to [the shelter]"). Never mind that many of these services have potentially life-

17  altering, negative consequences for the child—including, in some cases, sterilization.

18      115.   On the floor of the Washington State House, Representative Jamila Taylor

19  likewise described the purpose of the bill as saving kids from their parents:

20          "I just want to remind you, Mr. Speaker, that we're talking about children who
21          are not in this room hearing really encouraging language from their parents.
22          It's the combination, the tone, the tenor, the threats, the isolation, the words
23          that are constantly told you cannot be uniquely you. You cannot be something

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 27 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-038

1  other than what I desire for you to be. And if you do not follow my rules, you
2  cannot be here. If you want to follow my rules, I'm not even gonna give you
3  the safety, the comfort that you so desire when you want to be uniquely you.
4  Mr. Speaker, the microaggressions, the language a parent—I really wish more
5  parents had the skills that the parents were in this room talking about how they
6  would want to affirm their children, but say no. I wish more parents had that.
7  But I see a young person come to me on a regular basis saying I can't go home.
8  Home is not safe. . . . I tell you there are some unhealthy family dynamics out
9  there and that child, that child wants to go home, wants to see the love from
10 their parents. They need some way to communicate better with their parent.
11 Their parent needs another way to speak to this child, to get them through the
12 toughest parts part of their life. We must step in. We must provide a place for
13 this child."

14 House Floor Debate on SB 5599 (Apr. 12, 2023) (statement of Rep. Jamila Taylor,

15 Representative, at 1:42:32–1:44:55), *available at* https://tinyurl.com/4wdbhape.

16     116.   Senator Yasmin Trudeau similarly declared:

17 "And what ends up driving, you know, that the driving force often, especially for, for
18 our trans youth is the lack of acceptance. And we know the statistics when it comes
19 to suicide, when it comes to, you know, homelessness, when it comes to other issues
20 that disproportionately impact trans youth. It is a result of rejection by their family,
21 by the lack of love and support that's shown. And so I think that we all have, we
22 would love to know that every family is a family that supports their children. But Mr.
23 President, that just isn't the case . . . . So I just say, yes, for those of us that, that have
24 the means and the resources and the ability to love: wonderful. Many families don't.
25 And for the kids that come from those families, they deserve the support and love as
26 well as support this bill."

27 Senate Floor Debate on SB 5599 (Mar. 1, 2023) (statement of Sen. Yasmin Trudeau,  at

28 1:55:00–1:57:00).

29     117.   Of course, nothing in the statute requires any finding that the parents kicked

30 the child out of the home or in any other way neglected or abused their child to trigger the

31 various constitutional infringements to parents that the FRA amendments authorize. In the

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 28 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-039

1  eyes of these legislators, the parents' "sin" need be nothing more than the parents' desire to

2  allow their child to mature before making permanent life-altering decisions.

3     118.   In sum, because of the FRA amendments, where there is no indication of past

4  or future abuse or neglect, parents are treated differently under the law depending on

5  whether their minor children, when showing up to a shelter, are seeking or receiving "pro-

6  tected health care services," which includes "gender-affirming treatment."

7     119.   There is thus no process or procedure for determining if parents should be

8  notified of the location and well-being of their children or instead denied control over the

9  treatment of their child and denied having their child at home for a longer, indefinite period.

10  The absence of such a process or procedure is a serious deprivation of a parent's constitutional

11  rights.

12  ***Religious Beliefs of Some Plaintiffs***

13     120.   SB 5599 also interferes with the ability of some parents to comply with their

14  religious beliefs on matters of "gender-affirming treatment."

15     121.   For example, the Roman Catholic Church teaches that a human body is inten-

16  tionally and purposefully created by God as either male or female.

17     122.   As embraced by Parents 3A and 3B, the Roman Catholic Church teaches:

18  Everyone, man and woman, should acknowledge and accept his sexual identity. Phys-
19  ical, moral, and spiritual difference and complementarity are oriented toward the
20  goods of marriage and the flourishing of family life. The harmony of the couple and
21  of society depends in part on the way in which the complementarity, needs, and mu-
22  tual support between the sexes are lived out.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 29 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1   *Catechism of the Catholic Church* para. 2333, *available at* https://tinyurl.com/rwsdv27e

2   (last visited Aug. 16, 2023).

3       123.   Those Plaintiffs additionally adhere to the doctrine of the Roman Catholic

4   Church, when it teaches, "By creating the human being man and woman, God gives personal

5   dignity to the one and the other. Each of them, man and woman, should acknowledge and

6   accept his sexual identity." *Catechism of the Catholic Church* para. 2393.

7       124.   As to the religious faith of Parents 4A and 4B, whose beliefs on these issues

8   are informed by the Bible as they understand it, they know the Bible to teach that man and

9   woman are created by God as male or female, respectively, *see* Genesis 1:27 ("So God created

10  man in his own image, in the image of God he created him; male and female he created

11  them."),[5] that sexual activity is to be confined to a marriage relationship of a person of the

12  opposite biological sex, *see* Leviticus 18:22 ("You shall not lie with a male as with a woman;

13  it is an abomination"), and that biological males and females are not to embrace gender

14  expressions in their manner of dress that reflects society's expression of the opposite biolog-

15  ical sex, *see* 1 Corinthians 11:14–15 (discussing manners of dress associated with men and

16  distinct from those associated with women).

17      125.   Parents 3A and 3B believe that their faith places upon them a religious obliga-

18  tion to teach these religious beliefs to their children and guide them in living them. As the

19  Catechism teaches, "Through the grace of the sacrament of marriage, parents receive the

---

[5] All quotations to the Bible are from the English Standard Version (ESV).

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1  responsibility privilege of evangelizing their children. Parents should initiate their children at

2  an early age not the mysteries of the faith of which they are the 'first heralds' of their children.

3  They should associate them from their tenderest years with the life of the Church . . . ."

4  *Catechism of the Catholic Church* para. 2225, *available at* https://tinyurl.com/5t328kwa

5  (last visited Aug. 16, 2023).

6      126.    Parents 4A and 4B likewise hold this belief, as they believe God commands

7  them to do so in the Bible. *See, e.g.*, Deuteronomy 6:6–7 ("And these words that I command

8  you today shall be on your heart. You shall teach them diligently to your children, and shall

9  talk of them when you sit in your house, and when you walk by the way, and when you lie

10  down, and when you rise."); Ephesians 6:4 ("Fathers, do not provoke your children to anger,

11  but bring them up in the discipline and instruction of the Lord."); 2 Timothy 3:16–17 ("All

12  Scripture is breathed out by God and profitable for teaching, for reproof, for correction, and

13  for training in righteousness, that the man of God may be complete, equipped for every good

14  work.").

15  *The FRA Amendments Interfere with First and Fourteenth Amendment Rights*

16      127.    Notwithstanding parents' constitutional rights to direct the upbringing of their

17  children, with the FRA amendments, children of any age professing to seek "gender-affirm-

18  ing treatment" can do so through the Department if that child is in a homeless shelter or

19  host home.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 31 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-042

128. Guidelines from the World Professional Association of Transgender Health (WPATH) dangerously and irresponsibly recommend no age restrictions for transition therapy. Children as young as 8 have received puberty blockers and opposite-sex hormones, and girls as young as 12 have received mastectomies.

129. Moreover, as the bill's proponents made clear in the legislative history, SB 5599 penalizes parents of gender-confused children who both use the pronouns that correspond to the children's biological sex and refuse to use those children's preferred pronouns or name. By penalizing parents' refusal to engage in "gendering-affirming" speech and speaking contrary to it, SB 5599 equates such speech and refusal to speak with child abuse.

130. Governor Inslee appears to agree. He has declared regarding SB 5599, "With this bill, Washington leads the way . . . to support these youth as they access gender-affirming treatment." *Trans Minors Protected from Parents under Washington Law*, Associated Press (May 9, 2023), https://tinyurl.com/ynx7nm95. In other words, the FRA amendments provide minors access to treatments that their parents would not approve.

131. Additionally, given the vagueness of what parents need to do to convince the Department to return their child and "accomplish a reunification of the family," it is highly likely the Department will require parents to affirm through their speech their child's choices as to gender identity, thus compelling the parents' speech.

132. Likewise, given how the FRA amendments now incentivize youth to run away, knowing how SB 5599 will allow the State to keep their child from them will result in chilling

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 32 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-043

1   the parents' speech. For example, parents may cease using the child's given name and pro-

2   nouns that correspond with the child's biological sex out of fear caused by SB 5599, such as

3   Parent 2A in most public places.

4       133.   Additionally, the immediate likelihood of harm from the FRA amendments is

5   present because several of the Plaintiffs here have dealt with potential runaway children and

6   two Plaintiff had their gender-dysphoric child run away.

7       134.   Parent 2A and Parent 2B have two gender-confused children who have credi-

8   bly threatened to run away and explore places they could go. Both children are biological

9   females. This included one instance where the older, driving-age child was ready to provide

10   transportation to take the younger child (too young to drive) to an environment that would

11   provide gender affirmation.

12       135.   A primary reason the children of Parent 2A and Parent 2B threatened to run

13   away and explored doing so is because the parents declined to refer to the children by their

14   preferred names and pronouns, and instead referred to them by their birth names and bio-

15   logical pronouns.

16       136.   Parent 3A and Parent 3B also dealt with a potential runaway situation. Their

17   older son, who is fully desisted from a "transgender identity," was, when he was still "iden-

18   tifying as a girl," encouraged by a peer to run away from their home and live in a place where

19   the peer's parents would verbalize gender affirmation by using opposite-sex names and pro-

20   nouns.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 33 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

137.   Parents 3A and 3B believe that a similar episode recently occurred with 3C, in which the parents of a school friend surreptitiously arranged for their child to spend time outside their home with school friend and her mom, during which time the mom of the school friend would speak to the child of Parents 3A and 3B with the child's preferred name and preferred pronouns.

138.   And Parents 5A and 5B have a gender-dysphoric daughter who has run away—just last year.

139.   Even for those Plaintiffs whose children have not threatened to run away, the FRA amendments change the legal landscape such that children who may not have considered running away before now have an incentive to do so under the law because they can obtain health care services they desire without parental permission.

140.   For all these reasons, the FRA amendments create a significant risk that if one of Plaintiffs' children wishes "to transition" or further a "transition," either socially or medically, to a sex different from their biological sex—and that is a substantial risk for most of the children described above—one of the Defendants or their agents would facilitate the child's obtaining such a transition, contrary to the parents' desires for their children, or contrary to their religious beliefs, or both. Such an action by an agent of the State of Washington would violate the affected Plaintiffs' constitutional right to direct their child's upbringing, and their First Amendment right to teach and guide their child's activities in a manner consistent with the parents' faith commitments. This significant risk of a constitutional violation is the proximate result of SB5599.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 34 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-045

*Standing*

141.    For Article III standing, a "'plaintiff must have suffered an injury in fact,' *i.e.*, one that 'is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,' (2) the injury must 'be fairly traceable to the challenged action of the defendant,' and (3) it must be 'likely' that the injury is redressable by a favorable decision.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680 (9th Cir. Sept. 13, 2023) (en banc) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

142.    As to the injury-in-fact, the Supreme Court has observed that "[t]he more drastic the injury that government action makes more likely, the lesser the increment in probability to establish standing." *Massachusetts v. E.P.A.*, 549 U.S. 497, 525 n.23 (2007) (internal quotation marks omitted). "[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability." *Id.* (internal quotation marks omitted).

143.    Here the threatened injuries are "drastic"—the loss of the custody and control of one's child, the resultant irreversible harm to that child, and the infringement of First Amendment rights. Thus, only a "lesser . . . increment in probability [is needed] to establish standing"—just "a small probability of injury" will do. *Massachusetts,* 549 U.S. at 526. And the probability of Plaintiffs suffering the government-induced injuries noted above has significantly increased in the wake of amending the FRA. That is sufficient for standing.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 35 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    144.    Plaintiffs do not need to have children who are currently in a shelter to satisfy

2    the injury-in-fact requirement. The "risk of future injury" can satisfy standing, and "[t]he

3    anticipation of future injury may itself inflict present injury." *See* Wright & Miller, § 3531.4.

4    Thus, plaintiffs in *Harris v. Board of Supervisors, Los Angeles County*, 366 F.3d 754, 760–764

5    (9th Cir. 2004), did not have to currently be in a hospital to challenge a government body's

6    vote to reduce hospital beds in one hospital and close another.

7    145.    In the Ninth Circuit, "an injury is 'actual or imminent' where there is a 'cred-

8    ible threat' that a probabilistic harm will materialize." *Natural Resources Defense Council v.*

9    *U.S. E.P.A.*, 735 F.3d 873, 878–79 (9th Cir. 2013). Hence, an organization did not have

10   to show that its members' children would necessarily be exposed to a pesticide to have stand-

11   ing to challenge the conditional registration of that pesticide. *See id.* Rather, the court deter-

12   mined that without the conditional registration, "there is roughly no chance that the children

13   . . . will be exposed," but the "[c]onditional registration of the product increases the odds of

14   exposure." *Id.* at 878. And it mattered to the court in finding a credible threat that potentially

15   extensive applications of the pesticide meant the parents could not fully control their chil-

16   dren's exposure to the pesticide. *See id.*; *see also Raich v. Gonzales*, 500 F.3d 850, 857 (9th

17   Cir. 2007) (recognizing the anticipation of future actual injury and current fear in finding

18   standing).

19   146.    Likewise, here there is a credible threat that the probabilistic harm of at least

20   one of the Parent Plaintiffs' children running away to a shelter and triggering the amended

21   FRA will materialize. After all, four of the families have minor children who currently struggle

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 36 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-047

1   or recently struggled with gender dysphoria, and all of those have children were "socially

2   transitioned" by the State (through the public schools) behind the parents' backs. Further-

3   more, one of those children had previously run away. That means these parents have children

4   who are exactly the kids targeted by the FRA amendments. Just like it would be too late once

5   a child is exposed to a pesticide, thus allowing standing to challenge before the injury occurs,

6   so too here. Also, similar to the pesticide case, the FRA amendments have increased the odds

7   of parents suffering constitutional harms, which odds were zero before its passage. Further-

8   more, parents cannot fully control whether their children run away to a shelter. And there is

9   real fear on the part of at least some of these Parent Plaintiffs that their children will do just

10  that to take advantage of the FRA amendments. Injury in fact is thus satisfied.

11      147.   Additionally, children often hide their gender dysphoria and social transition-

12  ing from their parents, as some of the children of the Parent Plaintiffs did. And parents often

13  do not have a clue beforehand that a child will run away. Thus, any parent of minor children

14  in the state could potentially wake up tomorrow to find that the amended FRA has been

15  triggered and the parents' constitutional rights are being violated by Defendants.

16      148.   Plaintiffs also satisfy the second and third requirements of standing. Before the

17  FRA amendments, the probability of constitutional injuries here was zero—the threat is en-

18  tirely due to the statute's amendments, thus satisfying traceability. And so, holding uncon-

19  stitutional the FRA amendments will entirely redress the threat of injury.

20      149.   As to IPEC's standing, in the Ninth Circuit "[a]n organization has standing

21  to bring suit on behalf of its members if (1) at least one of its members would have standing

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 37 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-048

1   to sue in his own right, (2) the interests the suit seeks to vindicate are germane to the organ-

2   ization's purpose, and (3) neither the claim asserted nor the relief requested requires the

3   participation of individual members in the lawsuit." *Fellowship of Christian Athletes*, 82 F.

4   4th at 681 (internal quotation marks and citation omitted). IPEC satisfies all three require-

5   ments.

6        150.    First, one of its members is a Washington parent with custody of a minor child

7   who has struggled with gender dysphoria, thus meaning the member has independent stand-

8   ing to sue. Second, IPEC's very purpose is to advocate for parents' constitutional rights in

9   the context of gender dysphoria issues and to "stop the unethical treatment of children . . .

10  under the duplicitous banner of gender identity affirmation," *supra* ¶ 9, and IPEC is in this

11  lawsuit to vindicate these interests. Third, the participation of IPEC members is not necessary

12  as this is a suit about the law, not about the facts of individuals.

13       151.    Finally, it only takes one plaintiff to provide standing. *See Richmond v. Home*

14  *Partners Holdings LLC*, No. 3:22-CV-05704-DGE, 2023 WL 2787221, at *3 (W.D. Wash.

15  Apr. 5, 2023) (citing *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), *as amended* (Mar.

16  8, 1994); *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2

17  (2006)). This low bar is cleared here. All the Parent plaintiffs have minor children to which

18  the amended FRA would apply, and four have minor children who are or have suffered gen-

19  der confusion, with running away a credible threat for some of these minor children and a

20  reality for one. Standing is satisfied for at least one of Plaintiffs, and thus for all of them.

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

*Ripeness*

1

2      152.    In the Ninth Circuit, a "claim is usually ripe if the issues raised are primarily

3   legal, do not require further factual development, and the challenged action is final." *Center*

4   *For Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir. 2009) (citation and

5   internal quotation marks omitted). Additionally, "[i]n considering these elements, the court

6   must evaluate the fitness of the issues for judicial decision and the hardship to the parties of

7   withholding court consideration." *Id.* (cleaned up).

8      153.    This is a facial challenge against enacted laws requiring no factual development.

9   It is thus ripe for judicial review. And as the Ninth Circuit has declared, "[i]n the context of

10  a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does

11  not require a developed factual record." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d

12  1301, 1308 (11th Cir. 2009); *see also Freedom to Travel Campaign v. Newcomb*, 82 F.3d

13  1431, 1435 (9th Cir. 1996) (determining claims were ripe in the context of a purely legal

14  issue where organization which arranged trips to Cuba challenged regulation restraining right

15  to travel to Cuba, even though organization had not applied for, and had not been denied,

16  the specific license required under regulation).

17     154.    "As to the hardship of denying decision, some rights are thought more pre-

18  cious than others. . . . When such rights are at issue, ripeness may require a lower probability

19  and gravity of any predicted intrusion." Wright & Miller, § 3532.3, "Foundation For Deci-

20  sion And Hardship." So, for example, "when free speech is at issue, concerns over chilling

21  effect call for a relaxation of ripeness requirements." *Sullivan v. City of Augusta*, 511 F.3d

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 39 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-050

1   16, 31 (1st Cir. 2007). Not only is free speech at issue in this case, but also parental rights

2   deemed "essential" and "far more precious . . . than property rights," *Stanley v. Illinois*, 405

3   U.S. 645, 651 (1972). *See also Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty

4   interest at issue in this case—the interest of parents in the care, custody, and control of their

5   children—is perhaps the oldest of the fundamental liberty interests recognized by this

6   Court."); *Michael H. v. Gerald D.*, 491 U.S. 110, 123 (1989) (noting "the historic respect—

7   indeed, sanctity would not be too strong a term—traditionally accorded to the relationships

8   that develop within the unitary family").

9        155.   Given the "essential," "precious," "historic" "sanctity" of the rights at issue

10   here, a lower probability of intrusion satisfies the hardship element of ripeness doctrine. The

11   Plaintiffs' claims are thus sufficiently ripe for judicial review.

12            **CLAIMS FOR DECLARATORY JUDGMENT AND INJUNCTION**

13                                    **Count I**
14            **Federal Due Process Clause—Parents' Right to Refuse Treatment**
15                          **of their Minor Children**
16                   **U.S. Const. Amend. XIV, § 1, Cl. 3**

17        156.   Plaintiffs hereby incorporate the allegations made in each preceding paragraph

18   of this Complaint as if fully set forth herein.

19        157.   The Supreme Court has held that the Due Process Clause of the Fourteenth

20   Amendment, U.S. Const. amend. XIV, § 1, includes certain substantive rights. Fundamental

21   rights under the Constitution of the United States are those "deeply rooted in this Nation's

22   history and tradition" or "fundamental to our scheme of ordered liberty." *McDonald v. City*

23   *of Chicago*, 561 U.S. 742, 767 (2010) (internal quotation marks and emphasis omitted).

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 40 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    158.   Among these is parents' fundamental right to direct their children's upbring-

2    ing. *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *see also Troxel v. Granville*, 530

3    U.S. 57, 66 (2000) (plurality opinion) (discussing a long line of cases where the Supreme

4    Court has "recognized the fundamental right of parents to make decisions concerning the

5    care, custody, and control of their children").

6    159.   More specifically, the Ninth Circuit has observed that the Fourteenth Amend-

7    ment "includes the right of parents to make important medical decisions for their children,

8    and of children to have those decisions made by their parents rather than the state." *Wallis*

9    *v. Spencer*, 202 F.3d 1126, 1136, 1141 (9th Cir. 2000); *see also Jordan v. D.C.*, 161 F. Supp.

10   3d 45, 62 n.15 (D.D.C. 2016), *aff'd*, 686 F. App'x 3 (D.C. Cir. 2017) ("[T]he Supreme

11   Court has suggested, and other courts have held, that a minor has no independent liberty

12   interest to refuse medical treatment and that, before she reaches the age of maturity, the

13   liberty interest is held by a minor's parents or guardian."); *Kanuszewski v. Mich. Dep't of*

14   *Health & Hum. Servs.*, 927 F.3d 396, 414–15 (6th Cir. 2019) ("[T]he Supreme Court has

15   strongly suggested that minor children lack a liberty interest in directing their own medical

16   care. Instead, children must instead rely on parents or legal guardians to do so until they

17   reach the age of competency.").

18   160.   That is because "children, even in adolescence, simply are not able to make

19   sound judgments concerning many decisions, including their need for medical care or treat-

20   ment. Parents can and must make those judgments." *Parham*, 442 U.S. at 603. And "[t]he

21   fact that a child may . . . complain about a parental refusal to provide [treatment] does not

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 41 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    diminish the parents' authority to decide what is best for the child." *Id*. at 604. Thus, "[s]im-

2    ply because the decision of a parent is not agreeable to a child or because it involves risks

3    does not automatically transfer the power to make that decision from the parents to some

4    agency or officer of the state." *Id*. at 603.

5       161.   Further, federal courts have treated medical and mental-health treatment as

6    implicating the same constitutional parental rights. *Compare Mueller v. Auker*, 576 F.3d 979,

7    995 (9th Cir. 2009) (medical treatment) *with Parham*, 442 U.S. at 602–04 (mental-health

8    treatment).

9       162.   This right is deeply rooted in American history and tradition. *See, e.g., Wiscon-*

10   *sin v. Yoder*, 406 U.S. 205, 232 (1972); *Bellotti v. Baird*, 443 U.S. 622, 638 (1979); *Moore*

11   *v. City of East Cleveland*, 431 U.S. 494, 503 (1977).

12      163.   The amended FRA violates that right by giving the Department authority to

13   make referrals, without notice to or consultation with parents, for "appropriate behavioral

14   health services" for a child seeking "gender-affirming treatment."

15      164.   The FRA amendments thus interfere with the fundamental right of parents to

16   refuse treatment on their minor child's behalf by authorizing the child to engage in "treat-

17   ment" not authorized by the parent and by authorizing others to provide such treatment.

18      165.   Because the "right to rear children without undue governmental interference

19   is a fundamental component of due process," laws that burden that right are subject to strict

20   scrutiny, whereby the Fourteenth Amendment "forbids the government to infringe certain

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 42 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-053

1    fundamental liberty interests at all, no matter what process is provided, unless the infringe-

2    ment is narrowly tailored to serve a compelling government interest." *Nunez v. City of San*

3    *Diego*, 114 F.3d 935, 951–52 (9th Cir. 1997) (emphasis omitted) (internal quotation marks

4    omitted).

5         166.    For an interest to be compelling, it must be more than just the general welfare

6    of the child, which alone is not sufficient to justify interfering with the parental rights at issue

7    here. *See In re Parentage of C.A.M.A.*, 154 Wash. 2d 52, 64, 109 P.3d 405, 412 (2005)

8    ("Short of preventing harm to the child, the standard of 'best interest of the child' is insuffi-

9    cient to serve as a compelling state interest overruling a parent's fundamental rights."); *see*

10   *also Troxel,* 530 U.S. at 68–70. Cases justifying infringing parental rights tend to deal with

11   something akin to clear abuse or imminent physical threats. *E.g.*, *Mueller v. Auker*, 700 F.3d

12   1180, 1187 (9th Cir. 2012). Even with those circumstances, whenever possible, courts must

13   still give weight to the parental determinations. *Mann v. County of San Diego*, 907 F.3d

14   1154, 1160–61 (9th Cir. 2018).

15        167.    Here, the amended FRA does not do so. The amended FRA categorically does

16   not require evidence of abuse or extreme distress on the part of the child when it comes to

17   "gender-affirming treatment."

18        168.    Similarly, FRA's new provisions are not narrowly tailored, because they are not

19   confined to special circumstances and give no weight to a fit parent's views. Under FRA, a

20   runaway child's desire alone eviscerates parental rights, but that is not the constitutional

21   standard.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 43 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-054

1     169.   Plaintiffs have no adequate remedy at law.

2     170.   The actions Defendants are now required to take under the amended FRA

3     violate federal law, specifically by violating Plaintiffs' right to refuse treatment of their chil-

4     dren when there is no abuse or neglect and no health emergency for the child. Absent relief,

5     Defendants' actions continue to threaten to harm Plaintiffs by impairing their enjoyment of

6     this right.

**Count II**
**Federal Due Process Clause—Parents' Right to Custody of Children**
**U.S. Const. Amend. XIV, § 1, Cl. 3**

10     171.   Plaintiffs hereby incorporate the allegations made in each preceding paragraph

11     of this Complaint as if fully set forth herein.

12     172.   The Supreme Court has held that the Due Process Clause secures the related

13     substantive right of parents to have custody of their children. *Meyer v. Nebraska*, 262 U.S.

14     390, 399 (1923); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing "[t]he fun-

15     damental liberty interest of natural parents in the care, custody, and management of their

16     child"). Here, this is inextricably intertwined with the right of a family to live together. *Moore*,

17     431 U.S. at 498–500; *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1311 (9th Cir. 1982).

18     173.   The Supreme Court has consistently "afforded protection against temporary

19     deprivations in the parent-child relationship as part of the right to familial integrity." *Strail*

20     *ex rel. Strail v. Dep't of Child., Youth & Fams.*, 62 F. Supp. 2d 519, 526 (D.R.I. 1999);

21     *accord also David v. Kaulukukui*, 38 F.4th 792, 803-04 (9th Cir. 2022); *Keates v. Koile*, 883

22     F.3d 1228, 1238–39 (9th Cir. 2018). As multiple circuits have held, the "'separation of

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 44 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-055

1   parent from child, even for a short time, represents a serious infringement upon both the

2   parents' and child's rights.'" *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1019 (7th Cir. 2000)

3   (quoting *J.B. v. Washington Cnty.*, 127 F.3d 919, 925 (10th Cir. 1997)). After all, "the

4   importance of the familial relationship . . . stems from the emotional attachments that derive

5   from the intimacy of *daily* association." *Smith v. Org. of Foster Fams. For Equal. & Reform*,

6   431 U.S. 816, 844 (1977) (emphasis added). Thus, "when a state actor takes a child into

7   temporary custody, . . . a case worker must have no less than a reasonable suspicion of child

8   abuse (or imminent danger of abuse) before taking a child into custody prior to a hearing."

9   *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 23 (1st Cir. 2001).

10   174.   By denying to parents of children who seek the aforementioned health care

11   services information about the location of their children, as well as the custody and control

12   of their children, whether for an additional 3–7 days or indefinitely, the FRA amendments

13   interferes with the fundamental right of parents to have custody of their children and keep

14   the family unit together as a household when there is no finding of abuse or neglect, even if

15   that separation is only for an additional short period of time.

16   175.   Plaintiffs have no adequate remedy at law.

17   176.   The actions Defendants are now required to take violate federal law, specifically

18   by violating Plaintiffs' right to custody of their children and their right to keep their family

19   together. Absent relief, Defendants' actions continue to threaten to harm Plaintiffs by im-

20   pairing their enjoyment of this right.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 45 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**Count III**
**Federal Free Exercise Clause**
**U.S. Const. Amend. I, Cl. 2**

177.    Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

178.    The Free Exercise Clause of the First Amendment to the United States Constitution mandates that no instrumentality of any government in the United States shall enact any "law . . . prohibiting the free exercise" of religion. U.S. Const., amend. I, cl. 2. That right applies to the States through the Fourteenth Amendment. *See Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022).

179.    The Free Exercise Clause protects the right of individuals "to live out their faiths in daily life through the performance of (or abstention from) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (internal quotation marks omitted).

180.    Also, "[t]he Free Exercise Clause of the First Amendment protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson*, 142 S. Ct. at 1996 (internal quotation marks omitted).

181.    The free exercise of religion is a fundamental right, and a law goes to the core of that protected right when it involves raising children in accordance with the parents' religious faith. *See Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972).

182.    The amended FRA interferes with the right to free exercise of religion in multiple ways. First, by interfering with certain parents' custody and thus making it impossible to raise their children in accord with their faith during the time that the Defendants keep the

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 46 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-057

1   child away from parents without allowing contact—either directly, or indirectly through the

2   time it takes to notify parents of their child's location.

3       183.   Second, FRA overrides parent's religiously motivated decisions regarding

4   healthcare. The amended FRA violates that right by giving the Department authority to make

5   referrals for "appropriate behavioral health services" for a child seeking "gender-affirming

6   treatment" in opposition to some of the Plaintiff Parents' religious beliefs.

7       184.   Third, the amended FRA requires that the Department offer "*services* designed

8   to resolve the conflict and accomplish a reunification of the family." RCW

9   § 13.32A.082(3)(b)(ii). This directly violates the religious beliefs of Parents 3A, 3B, 4A, and

10  4B, and others like them, who decline to affirm a gender identity that is incongruent with

11  their child's biological sex, by giving the runaway minor "medical treatments" or "mental-

12  health services" that parents disapprove of and then forcing a reconciliation of the "conflict"

13  that the State has now exacerbated.

14      185.   The law thus necessarily infringes a hybrid right of free exercise and parental

15  rights. *See, e.g., Employment Division v. Smith*, 494 U.S. 872, 881-882 & n.1 (1990) (dis-

16  cussing infringement of hybrid rights as a basis for requiring strict scrutiny). Thus, FRA must

17  satisfy strict scrutiny even if it is generally applicable because it involves fundamental rights

18  of free exercise *and* raising children. In such hybrid cases, strict scrutiny must be employed,

19  even if the burden on these combined rights is only incidental. *See Yoder*, 406 U.S. at 215.[6]

---

[6] The Supreme Court has never disavowed hybrid rights, and re-affirmed such in *City of Boerne v. Flores*, 521 U.S. 507, 514 (1997). So as the Supreme Court has commanded, "[i]f a precedent of this Court has direct application in a case, a lower court should follow the case

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 47 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-058

1    186.   In the Ninth Circuit, "to assert a hybrid-rights claim, a free exercise plaintiff

2  must make out a colorable claim that a companion right has been violated—that is, a fair

3  probability or a likelihood, but not a certitude, of success on the merits." *San Jose Christian*

4  *Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1032 (9th Cir. 2004) ("SJCC") (quoting *Miller*

5  *v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999)). Upon doing so, strict scrutiny is triggered.

6  *Ohno v. Yasuma*, 723 F.3d 984, 1012 (9th Cir. 2013) (citing *SJCC*, 360 F.3d at 1031). As

7  noted in this complaint, Plaintiffs have made out colorable federal constitutional claims im-

8  plicating parental rights, free speech, and due process, thus requiring strict scrutiny of the

9  amended FRA.

10    187.   Turning to *Yoder*, it is clear that the FRA violates this combination of free

11  exercise rights and parental rights. Any substantial interference with religious upbringing is

12  enough to trigger this right. Interference need not cause rejection of religious tenets or prac-

13  tice. As *Yoder* explained, "[n]or is the impact of the . . . law confined to grave interference

14  with important Amish religious tenets from a subjective point of view. It carries with it pre-

15  cisely the kind of objective danger to the free exercise of religion that the First Amendment

16  was designed to prevent." 406 U.S. at 218.

---

which directly controls, leaving to this Court the prerogative of overruling its own decisions."
*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (cleaned up). If that is not enough,
the Ninth Circuit has repeatedly recognized the *Smith* hybrid-rights doctrine. *See, e.g.*,
*Thomas v. Anchorage Equal Rights Comm'n*, 165 F.3d 692, 704 (9th Cir. 1999), *withdrawn
and reh'g granted*, 192 F.3d 1208 (9th Cir. 1999), *vacated en banc as not ripe*, 220 F.3d
1134 (9th Cir. 2000); *Miller v. Reed*, 176 F.3d 1202, 1207–08 (9th Cir. 1999); *San Jose
Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1032 (9th Cir. 2004) ("SJCC");
*Ohno v. Yasuma*, 723 F.3d 984, 1012 (9th Cir. 2013).

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 48 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

188.   Here, the threat is at least as strong as the speculative threat identified in *Yoder*—and exponentially more concrete. Providing "gender-affirming treatment" without parental knowledge or consent does not just create a "real threat" of undermining religious belief or practice; it guarantees it. Even providing the incentive to run away, by offering treatment against parental wishes, creates the "real threat." And beyond that, an extended interference with parental custody, by a state agency that is at best in disagreement with parents' religious beliefs, and possibly even hostile to them, creates a very real threat of undermining the parents' religious authority and ability to raise their children consistent with their faith.

189.   By directly authorizing the Department to refer a minor for "behavioral health services" consistent with the child's desire for "gender-affirming treatment," the amended FRA and RCW § 71.34.530 directly undermine the parents' religious and parental rights in the upbringing of their children, damage the parent-child relationship, and further harm the child by having a person in authority "affirm" an incongruent sexual identity.

190.   Accordingly, to invoke *Yoder* again, "[t]he conclusion is inescapable" that the amended FRA "substantially interfere[es] with the religious development of [Plaintiffs'] child[ren] . . . at the crucial adolescent stage of development," and "contravenes the basic religious tenets and practices of [Plaintiffs'] faith, both as to the parent and the child." *Id.* at 218. It is "inescapable" because parents have no recourse once the child is at the shelter, save for reunification after approval under nebulous standards by a state agent and after the child

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 49 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    is referred to "behavioral health services" almost assuredly in conflict with the parent's reli-

2    gious beliefs. *Id*. Under the circumstances present here, Parents' hybrid rights are clearly

3    infringed. *Hooks*, 228 F.3d at 1042. It is difficult to imagine more important rights. *See Pierce,*

4    268 U.S. 510, 534–35; *Meyer*, 262 U.S. at 399.

5        191.    Parental rights to raise their children according to their faith and direct their

6    upbringing are precisely the kinds of rights "beyond the power of the State to control,"

7    particularly when it comes to overriding parental judgment when it comes to declining to

8    encourage a gender identity inconsistent with their child's biological sex. Yet that is just what

9    the amended FRA is attempting to do. It thus triggers strict scrutiny.

10       192.    Strict scrutiny is a high bar. As the U.S. Supreme Court has emphasized, a law

11   "can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly

12   tailored to achieve those interests." *Fulton v. City of Phila*., 141 S. Ct. 1868, 1881 (2021)

13   (quoting *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 546

14   (1993)). "Put another way, so long as the government can achieve its interests in a manner

15   that does not burden religion, it must do so." *Id*.

16       193.    Defendants cannot satisfy strict scrutiny here. First, Defendants cannot claim

17   an interest here that approaches the importance of the one identified in *Yoder*. Promoting

18   "gender-affirming treatment" or placing children's wishes ahead of their parents' judgment

19   is nowhere near "the very apex of the function of the State." *Id*. at 213.

20       194.    Nor can the State's general interest in preventing harm against children in gen-

21   eral suffice, because "the First Amendment demands a more precise analysis." *Fulton*, 141 S.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 50 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1   Ct. 1881. Defendants have no legitimate interest in providing "gender-affirming treatment"

2   contrary to parental wishes absent some specific threat of abuse from the parents, because

3   "[t]here can be no assumption that today's majority is 'right' and the [Plaintiffs] and others

4   like them are 'wrong.' A way of life that is odd or even erratic but interferes with no rights

5   or interests of others is not to be condemned because it is different." *Yoder*, 406 U.S. at

6   223–24. Nor can any possible workarounds excuse the infringement. Indeed, the pressure to

7   create such workarounds shows all too well the danger to constitutional rights. *Yoder*, 406

8   U.S. at 218 n.9.

9        195.   Further, the law is not narrowly tailored because it is overinclusive, sweeping

10   in situations where there is no abuse or neglect, as well as situations where the child may have

11   shown up at a shelter having nothing to do with "gender-affirming treatment." *See Lukumi*,

12   508 U.S. at 538 (finding laws violated the Free Exercise Clause because "they proscribe more

13   religious conduct than is necessary to achieve their stated ends"). Indeed, FRA does not even

14   tie providing treatment to the reason the child ran away. Instead, the amended statute now

15   says, in essence, "if you run away *for any reason* and want 'gender-affirming treatment,' you

16   can get it regardless of what your parents want."

17        196.   Plaintiffs have no adequate remedy at law.

18        197.   The actions Defendants are now required to take violate federal law, specifically

19   by violating Plaintiffs' right to raise their children according to the parents' faith. Absent

20   relief, Defendants' actions continue to threaten to harm Plaintiffs.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 51 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**Count IV**
**Federal Free Speech Clause**
**U.S. Const. Amend. I, Cl. 3**

198.   Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

199.   The Free Speech Clause of the First Amendment to the United States Constitution mandates that no instrumentality of any government in the United States shall enact any "law . . . abridging the freedom of speech." U.S. Const. amend. I, cl. 3. That right applies to the States through the Fourteenth Amendment. *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006).

200.   Yet another reason for First Amendment protections is "because the freedom of thought and speech is indispensable to the discovery and spread of political truth. By allowing all views to flourish, the framers understood, we may test and improve our own thinking both as individuals and as a Nation." *303 Creative*, 143 S. Ct. at 2311 (internal quotation marks omitted). "Gender-affirming treatment" is one of the most controversial political, social, and medical issues in American life, meriting the apex of First Amendment protection.

201.   The amended FRA has the effect of simultaneously compelling and chilling speech in accordance with the views of the majority of the state legislature and the Governor.

202.   The legislative history of SB 5599 shows the statute's supporters equate a parent who does not verbally affirm a child's gender identity by using the child's preferred names

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 52 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-063

1    and pronouns with an abusive environment, arguing that such abuse is what makes the stat-

2    ute's provisions necessary.

3        203.    By doing so, SB 5599 and HB 1406 chill protected speech, as parents with a

4    gender-confused child may fear to use certain speech (birth name, preferred pronouns) or

5    say certain things ("You are still the same gender as when you were born") that could lead

6    to the child seeking to trigger the amended FRA. And chilling free speech can violate the

7    Constitution. *See Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996) ("[C]onstitu-

8    tional violations may arise from the deterrent, or 'chilling,' effect of governmental efforts that

9    fall short of a direct prohibition against the exercise of First Amendment rights . . . .") (in-

10   ternal quotation marks omitted).

11       204.    Likewise, the vagueness associated with what parents must do to qualify for

12   reunification with their child violates the First Amendment by chilling speech. *See F.C.C. v.*

13   *Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012) ("When speech is involved, rig-

14   orous adherence to [void for vagueness doctrine] requirements is necessary to ensure that

15   ambiguity does not chill protected speech."); *see also Nat'l Endowment for the Arts v. Finley*,

16   524 U.S. 569, 588 (1998).

17       205.    When parents speak on issues of "gender-affirming treatment" with their chil-

18   dren, the right to free speech converges with the fundamental right to raise children.

19       206.    For Plaintiffs 3A, 3B, 4A, and 4B, this aspect of the amended FRA infringes

20   upon a third fundamental right. Speaking words based on faith is protected by both the Free

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 53 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-064

1  Speech Clause and the Free Exercise Clause. An example is prayer, regarding which the Su-

2  preme Court held that "[b]oth the Free Exercise and Free Speech Clauses of the First

3  Amendment protect [those] expressions . . . ." *Kennedy*, 142 S. Ct. at 2416. Given that the

4  right to direct the upbringing of children is implicated as well, when the parent speaks on

5  gender identity from the vantage point of religious faith, the amended FRA sits on a nexus

6  of at least three violations of fundamental rights.

7       207.   As to compelled speech, the amended FRA provides that the Department shall

8  offer "services designed to resolve the conflict and accomplish a reunification of the family."

9  Wash. Rev. Code § 13.32A.082(3)(b)(ii). To the extent that such "reunification" would be

10  contingent on the parents' using a child's preferred name and preferred pronouns, the De-

11  partment would be compelling speech by coercing a parent to say words they do not believe.

12       208.   For parents such as Plaintiffs here, even when LGBT issues and children are

13  concerned, the Supreme Court has held that the First Amendment does not allow the State

14  to "interfere with [their] choice not to propound a point of view contrary to [their] beliefs."

15  *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 654 (2000). So, "the First Amendment protects an

16  individual's right to speak his mind regardless of whether the government considers his

17  speech sensible and well intentioned or deeply misguided, and likely to cause anguish or

18  incalculable grief." *303 Creative*, 143 S. Ct. at 2312 (internal quotation marks omitted).

19       209.   These protections are heightened, if anything, where the State commands that

20  a person must give utterance to particular views because, as a general matter, "the govern-

21  ment may not compel a person to speak its own preferred messages." *Id.*

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 54 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    210.   The amended FRA thus abridges free speech in three regards. First, it penalizes

2    parents for expressing their views on gender identity.

3    211.   Second, this is also compelled speech. SB 5599 penalizes parents for not ex-

4    pressing support for a child's gender identity, including not using "preferred pronouns" or

5    a preferred name when speaking to or referring to a gender-confused child, equating such

6    speech with child abuse. Compelled speech violates the Free Speech Clause. *See Janus v. Am.*

7    *Fed'n of State, Cnty., & Mun. Emps.*, 138 S. Ct. 2448, 2463 (2018) ("We have held time

8    and again that freedom of speech 'includes both the right to speak freely and the right to

9    refrain from speaking at all.'") (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)); *see*

10    *also W. Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in

11    our constitutional constellation, it is that no official, high or petty, can prescribe what shall

12    be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to*

13    *confess by word or act their faith therein*.") (emphasis added).

14    212.   Third, SB 5599 chills parents' speech. That is currently occurring with some

15    of the Parent Plaintiffs and their unwillingness to use the names and pronouns they would

16    prefer to use regarding their child to their child, out of fear it will lead to the child relying

17    on the FRA amendments to run away.

18    213.   Plaintiffs have no adequate remedy at law.

19    214.   The actions Defendants are now effectively required and allowed to take violate

20    the U.S. Constitution, specifically by posing a substantial threat to Plaintiffs' rights to freely

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 55 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-066

1  express their views on these issues and to refrain from speech that contradicts the State's

2  preferred views. Absent relief, Defendants' actions continue to threaten to harm Plaintiffs.

**Count V**
**Federal Due Process Clause—Deprivation of Parental and Religious Rights**
**Without Procedural Due Process**
**U.S. Const. Amend. XIV, § 1, Cl. 3**

7     215.   Plaintiffs hereby incorporate the allegations made in each preceding paragraph

8  of this Complaint and the attached declarations as if fully set forth herein.

9     216.   The Due Process Clause of the Fourteenth Amendment guarantees that no

10 State shall "deprive any person of life, liberty, or property without due process of law." U.S.

11 Const., amend. XIV, § 1, cl. 3.

12    217.   Moreover, "[c]ourts have characterized the right to familial association as hav-

13 ing . . . a procedural component." *Keates*, 883 at 1236. The "procedural" component is the

14 principle that officials may interfere with this "liberty interest" only if they "provide the par-

15 ents with fundamentally fair procedures." *Id*. (quoting *Santosky*, 455 U.S. at 754). The Four-

16 teenth Amendment guarantees "that parents and children will not be separated by the state

17 without due process of law except in an emergency." *Wallis*, 202 F.3d at 1136.

18    218.   Further, because "parent[s] ha[ve] a constitutionally protected right to the

19 care and custody of [their] children," parents "c[an]not be summarily deprived of that cus-

20 tody without notice and a hearing, except when the children [a]re in imminent danger."

21 *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997). And, of critical importance here, "the

22 continued separation of a child from her custodial parent is constitutional only if the scope,

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 56 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-067

1  degree, and duration of the intrusion is reasonably necessary to avert the specific injury at

2  issue." *David*, 38 F.4th at 803 (internal quotation marks omitted).

3      219.    Here, the amended FRA deprives parents of their liberty interest in the custody

4  of their children without the procedural safeguards required by the Due Process Clause. Prior

5  to the amendments, the FRA already provided safeguards for children who were subject to

6  abuse or neglect. The amendments, therefore, concern children who are not subject to abuse

7  or neglect, are not in imminent danger, and where there is no emergency, with the FRA now

8  prolonging the separation of parent and child solely because the child is seeking or receiving

9  certain treatment. This failure to notify parents and unreasonably delay or prohibit parent-

10  child reunification supports no governmental interest, certainly not an important or compel-

11  ling one.

12      220.    The amended FRA authorizes potentially life-changing treatments, even if lim-

13  ited to "appropriate behavioral health services," before notification to parents. At a mini-

14  mum, the lack of adequate notice allows shelters, acting as the State's agents, to interpose

15  themselves between parents and their children for a protracted period without just cause or

16  procedural safeguards.[7] The statutory framework thereby deprives Washington parents, such

---

[7] A shelter, in taking these statutorily required steps, is a state actor subject to the Fourteenth Amendment's strictures. "Conduct that is formally 'private' may become so entwined with governmental policies . . . as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299 (1966). The FRA requires shelters to contact the Department and to refrain from contacting parents, when "compelling reasons" under the statute exist. In so doing, shelters act as the state's agents. *See Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000).

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 57 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    as Plaintiffs, of their procedural due process rights. Multiple aspects of that framework are

2    constitutionally objectionable.

3         221.   First, as explained above, the amended FRA and RCW § 71.34.530 allow the

4    State to interpose other decision-makers between parents and their children on matters of

5    medical and mental-health treatment. Because the amended FRA and RCW § 71.34.530

6    allow at least some treatments to be performed on children without notice to their parents

7    or any other procedures to protect parental rights, the statute violates the Due Process

8    Clause.

9         222.   Secondly, the amended FRA imposes undue physical separation of parents and

10    their children. The statute plainly exempts from the prompt parental-notice requirement

11    cases where minors are seeking or receiving "gender-affirming treatment." Even if Paragraph

12    3(a) of FRA also applies to situations covered by Paragraph 3(b), the timing of parental notice

13    substantially impairs parental rights by delaying notice from at most 72 hours to potentially

14    10 days, with no promise of reunification.

15         223.   The amended FRA thus unconstitutionally infringes upon parents' "constitu-

16    tionally protected right to the care and custody of [their] children . . . without notice and a

17    hearing," even where there is no evidence that "the children [a]re in imminent danger."

18    *Ram*, 118 F.3d at 1310. While the FRA does not set out procedures to terminate parental

19    rights, it arbitrarily delays family reunification under non-exigent circumstances. The delayed-

20    notice regime established by amended FRA, as well as RCW § 71.34.530, deny parents the

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 58 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-069

1   "opportunity to exercise th[e] right . . . to participate in [their] child's care and manage-

2   ment," especially given the State's intent to provide behavioral health services during the

3   separation without parental consent. *See James v. Rowlands*, 606 F.3d 646, 655 (9th Cir.

4   2010); *see also* Gregory A. Loken, *"Thrownaway" Children and Throwaway Parenthood*, 68

5   Temp. L. Rev. 1715, 1762 n.241 (1995) ("[P]roperly drawn runaway . . . youth statutes

6   include a requirement that parents be notified of the child's whereabouts.").

7       224.   When due process is implicated, "the question remains what process is due."

8   *FDIC v. Mallen*, 486 U.S. 230, 240 (1988) (internal quotation marks omitted). "The fun-

9   damental requirement of due process is the opportunity to be heard at a meaningful time

10  and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal

11  quotation marks omitted).

12      225.   Generally, the Due Process Clause ensures a fair hearing by an unbiased deci-

13  sion maker. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Here, however, parents

14  of children who claim to be receiving or seeking certain treatment are immediately deprived

15  of their rights to the custody and companionship of their children, to refuse treatment for

16  their children, and to raise children in the parents' faith tradition with no process whatsoever.

17      226.   Even for accusations of domestic violence or severe substance abuse, Subsec-

18  tion 3 provides due process by allowing for an individualized assessment to see if there is a

19  compelling reason to withhold information about the child's whereabouts from the parents.

20  But for parents of children seeking "gender-affirming treatment," there is not even a minimal

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 59 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-070

1    procedure to provide due process. This lack of even minimal process is a violation of due

2    process.

3         227.   Plaintiffs have no adequate remedy at law.

4         228.   The actions Defendants are now required or allowed to take violate the U.S.

5    Constitution, specifically by posing a substantial threat to Plaintiffs' right not to be deprived

6    of any liberty interest without due process of law. Absent relief, Defendants' actions continue

7    to threaten to harm Plaintiffs.

8                              **Count VI**
9              **Federal Due Process Clause—Void for Vagueness**
10                 **U.S. Const. Amend. XIV, § 1, Cl. 3**

11        229.   Plaintiffs hereby incorporate the allegations made in each preceding paragraph

12   of this Complaint as if fully set forth herein.

13        230.   Due process requires that laws not be "so vague that men of common intelli-

14   gence must necessarily guess at its meaning and differ as to its application." *F.C.C. v. Fox*

15   *Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (internal quotation marks omitted).

16        231.   While the void-for-vagueness doctrine is most often employed in challenges to

17   criminal statutes, the Supreme Court has also applied it to civil statutes. *See, e.g., A. B. Small*

18   *Co. v. American Sugar Ref. Co.*, 267 U.S. 233, 239-42 (1925); *Giaccio v. Pennsylvania*, 382

19   U.S. 399, 402–03 (1966).

20        232.   Additionally, the Supreme Court has determined that a statute can be held

21   unconstitutionally vague not only for failing to provide sufficient warning of the conduct

22   prohibited by law but also for lacking standards restricting the discretion of governmental

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 60 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-071

1   authorities who apply the statute. *See, e.g., Papachristou v. City of Jacksonville*, 405 U.S. 156,

2   165–70 (1972); *Giaccio*, 382 U.S. at 402–03; *Lanzetta v. New Jersey*, 306 U.S. 451 (1939).

3       233.   It is not clear whether the amended FRA's provision regarding reconciliation

4   and reunification services allows the Department or a provider to condition such reconcilia-

5   tion or reunification on the parents agreeing to call a gender-confused child by the child's

6   preferred name or pronouns or agreeing to allow the child to receive treatment that the child

7   needs parental permission for but that the parents oppose. Multiple Plaintiffs are not sure

8   what they would have to do to get their child back.

9       234.   What is more, the FRA amendments provide Department actors unfettered

10   discretion on whether to allow reunification, thus creating a risk of arbitrary or excessive

11   discretion in applying the law, which violates the void-for-vagueness doctrine.

12       235.   Plaintiffs have no adequate remedy at law.

13       236.   The actions Defendants are now required to take violate federal law, specifically

14   by posing a substantial threat to Plaintiffs' right not to be deprived of any liberty interest

15   without due process of law. Absent relief, Defendants' actions continue to threaten to harm

16   Plaintiffs.

**Count VII**
**14th Amendment Due Process Clause—Parents' Substantive Due Process Right to Reject Treatment for their Children**

20       237.   Plaintiffs hereby incorporate the allegations made in each preceding paragraph

21   of this Complaint as well as the attached declarations as if fully set forth herein.

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 61 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

238.   The Ninth Circuit has observed that the Fourteenth Amendment "includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1136, 1141. *See also Jordan v. D.C.*, 161 F. Supp. 3d 45, 62 n.15 (D.D.C. 2016), *aff'd*, 686 F. App'x 3 (D.C. Cir. 2017) ("[T]he Supreme Court has suggested, and other courts have held, that a minor has no independent liberty interest to refuse medical treatment and that, before she reaches the age of maturity, the liberty interest is held by a minor's parents or guardian."); *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 414–15 (6th Cir. 2019) ("[T]he Supreme Court has strongly suggested that minor children lack a liberty interest in directing their own medical care. Instead, children must instead rely on parents or legal guardians to do so until they reach the age of competency.").

239.   That is because "children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgments." *Parham*, 442 U.S. at 603. And "[t]he fact that a child may . . . complain about a parental refusal to provide [treatment] does not diminish the parents' authority to decide what is best for the child." *Id.* at 604. Thus, "[s]imply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Id.* at 603.

240.   Further, federal courts have treated medical and mental-health treatment as implicating the same constitutional parental rights. *Compare Mueller v. Auker*, 576 F.3d 979,

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 62 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-073

1  995 (9th Cir. 2009) (medical treatment) *with Parham*, 442 U.S. at 602–04 (mental-health

2  treatment).

3      241.    This right is deeply rooted in American history and tradition. *See, e.g., Wiscon-*

4  *sin v. Yoder*, 406 U.S. 205, 232 (1972); *Bellotti v. Baird*, 443 U.S. 622, 638 (1979); *Moore*

5  *v. City of East Cleveland*, 431 U.S. 494, 503 (1977).

6      242.    In Washington, "[a]ny adolescent may request and receive outpatient treat-

7  ment without the consent of the adolescent's parent. Parental authorization, or authorization

8  from a person who may consent on behalf of the minor pursuant to RCW 7.70.065, is re-

9  quired for outpatient treatment of a minor under the age of thirteen." Wash. Rev. Code Ann.

10  § 71.34.530.

11      243.    Section 71.34.530 essentially emancipates children from their parents as to

12  outpatient treatment once they reach the age of 13.

13      244.    This violates the federal constitutional right parents possess to refuse treatment

14  for their children until they reach age 18.

15      245.    Some of the Parent Plaintiffs have had their parental rights violated under this

16  statute when, for example, at the school's facilitation, their child received treatment from a

17  school counselor to socially transition.

18      246.    Additionally, in the context of the amended FRA, Defendants rely on Section

19  71.34.530 in conjunction with the amended FRA's Paragraph 3(b)(i) to facilitate "behavioral

20  health services" for youth covered by Paragraph 3(b). The "behavioral health services" or

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 63 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1   any other potential medical services referrals available under the amended FRA are not nec-

2   essary to protect the health of the child, but actually harm the child by encouraging an alter-

3   nate gender identity that the overwhelming majority of children abandon after puberty when

4   such "affirming" treatments are not offered. This is not a case where such services are neces-

5   sary to protect or save the life of the child, but actually do the opposite and override the

6   wishes of parents such as Plaintiff parents.

7   247.   Section 71.34.530 thus violates Plaintiffs' parental rights under the Fourteenth

8   Amendment.

9   248.   Plaintiffs have no adequate remedy at law.

10   249.   The actions Defendants are now required to take violate state law, specifically

11   by posing a substantial threat to Plaintiffs' right not to be deprived of any liberty interest

12   without due process of law. Absent relief, Defendants' actions continue to threaten to harm

13   Plaintiffs.

14   **PRAYER FOR RELIEF**

15   WHEREFORE, Plaintiffs request that the Court issue an order and judgment:

16   1.   Declaring that under Count I, the threatened denial by Defendants pursuant

17   to SB5599 and/or HB 1406 of Plaintiffs' right to refuse treatment for their minor children

18   violates the federal Due Process Clause of the Fourteenth Amendment.

19   2.   Declaring that under Count II, the threatened denial by Defendants pursuant

20   to SB5599 and/or HB 1406 of Plaintiffs' right to the custody of their children, and the

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 64 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-075

1    consequent ability to keep their family together, violates the federal Due Process Clause of

2    the Fourteenth Amendment;

3        3.      Declaring that under Count III, the threatened denial by Defendants pursuant

4    to SB5599 and/or HB 1406 of Plaintiffs' right to raise their children according to the par-

5    ents' faith violates the federal Free Exercise Clause of the First Amendment as applicable to

6    the States through the Fourteenth Amendment;

7        4.      Declaring that under Count IV, the threatened denial by Defendants pursuant

8    to SB5599 and/or HB 1406 of Plaintiffs' rights to express to their children and others their

9    views regarding gender identity, and requiring certain speech to get their children back, vio-

10   lates the federal Free Speech Clause of the First Amendment as applicable to the States

11   through the Fourteenth Amendment;

12       5.      Declaring that under Count V, the threatened denial by Defendants pursuant

13   to SB5599, HB 1406, and/or Washington Revised Code Annotated § 71.34.530 of Plain-

14   tiffs' right not to be deprived of their liberty interests in raising their children without due

15   process of law violates the federal Due Process Clause of the Fourteenth Amendment;

16       6.      Declaring that under Count VI, the threatened denial by Defendants pursuant

17   to SB5599 and/or HB 1406 of Plaintiffs' right to have adequate notice of what the law

18   commands or forbids and right to not have state actors arbitrarily enforce the law leads to

19   the result that SB 5599 and/or HB 1406 is void for vagueness and thus violates the federal

20   Due Process Clause;

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-05736-DGE
Page 65 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

ER-076

1      7.     Declaring that under Count VII, the threatened denial by Defendants pursu-

2 ant to Washington Revised Code Annotated § 71.34.530 of Plaintiff's right to refuse treat-

3 ment for their minor child violates the Due Process Clause of the Fourteenth Amendment.

4      8.     Enjoining Defendants through a preliminary injunction, to be succeeded by a

5 permanent injunction, from enforcing the challenged provisions of SB 5599, HB 1406, and

6 Section 71.34.530;

7      9.     Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988

8 and other applicable laws; and

9      10.    Granting any other relief the Court deems just, proper, and appropriate.

Dated: November 6, 2023                     Respectfully submitted.

 /s/ Jonathan F. Mitchell                    /s/ Gene Schaerr 
JONATHAN F. MITCHELL                        GENE SCHAERR*
Washington Bar No. 52483                    EDWARD H. TRENT*
Mitchell Law PLLC                           Schaerr | Jaffe LLP
111 Congress Avenue, Suite 400              1717 K Street NW, Suite 900
Austin, Texas 78701                         Washington, DC 20006
(512) 686-3940                              (202) 787-1060
jonathan@mitchell.law                       gschaerr@schaerr-jaffe.com
                                            etrent@schaerr-jaffe.com

REED D. RUBINSTEIN**
NICHOLAS BARRY*
IAN PRIOR*
JAMES ROGERS*
America First Legal Foundation
611 Pennsylvania Avenue SE, No. 231
Washington, DC 20003
(206) 964-3721
reed.rubenstein@aflegal.org                 * admitted *pro hac vice*
nicholas.barry@aflegal.org                  ** *pro hac vice* application forthcoming
ian.prior@aflegal.org
james.rogers@aflegal.org                    *Counsel for Plaintiffs*

VERIFIED FIRST AMENDED COMPLAINT                MITCHELL LAW PLLC
CASE NO. 3:23-cv-05736-DGE                       111 Congress Avenue, Suite 400
Page 66 of 67                                              Austin, Texas 78701
                                                             (512) 686-3940

ER-077

## CERTIFICATE OF SERVICE

I certify that on November 6, 2023, this document was served through the Court's

CM/ECF document filing system upon:

CRISTINA SEPE
MARSHA CHIEN
Deputy Solicitors General
1125 Washington Street SE
Post Office Box 40100
Olympia, Washington 98504-0100
(360) 753-6200
cristina.sepe@atg.wa.gov
marsha.chien@atg.wa.gov

ANDREW R.W. HUGHES
LAURYN K. FRAAS
Assistant Attorneys General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
lauryn.fraas@atg.wa.gov

*Counsel for Defendants*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*

VERIFIED FIRST AMENDED COMPLAINT
CASE NO. 3:23-cv-05736-DGE
Page 67 of 67

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. §**

**1746**

I, Martha Shoultz, on behalf of the International Partners for Ethical Care, Inc. (IPEC), declare under penalty of perjury that the foregoing allegations that pertain to IPEC are true and correct to the best of my knowledge.

Dated: 11/6/23

Martha Shoultz

Verification of Martha Shoultz on behalf of IPEC
case no. 3:23-cv-05736-dge
page 1 of 10

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2         I, ███████████ appearing in this case as Parent 1A, declare under penalty of per-

3    jury that the foregoing allegations that pertain to me are true and correct to the best of

4    my knowledge.

5

6

7         Dated: 11/6/23

Verification of Parent 1A                                    Mitchell Law PLLC
case no. 3:23-cv-05736-dge                          111 Congress Avenue, Suite 400
page 1 of 1                                                  Austin, Texas 78701
                                                              (512) 686-3940

1     **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2        I, ████████, appearing in this case as Parent 1B, declare under penalty of perjury

3     that the foregoing allegations that pertain to me are true and correct to the best of my

4     knowledge.

5

6

7     Dated: 11/6/23

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2    I, ▮▮▮▮▮ appearing in this case as Parent 2B, declare under penalty of per-

3    jury that the foregoing allegations that pertain to me are true and correct to the best of

4    my knowledge.

5

6

7    Dated: 11/6/23

Verification of Parent 2B                              Mitchell Law PLLC
case no. 3:23-cv-05736-dge                  111 Congress Avenue, Suite 400
page 1 of 1                                              Austin, Texas 78701
                                                            (512) 686-3940

1    **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2    I,           appearing in this case as Parent 2A, declare under penalty of per-

3    jury that the foregoing allegations that pertain to me are true and correct to the best of

4    my knowledge.

5

6

7    Dated: 11/6/23

Verification of Parent 2A
case no. 3:23-cv-05736-dge
page 1 of 1

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1  **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2      I, ▮▮▮▮▮▮▮▮▮▮ appearing in this case as Parent 3A, declare under

3  penalty of perjury that the foregoing allegations that pertain to me are true and correct

4  to the best of my knowledge.

5

6

7      Dated: 11/6/23

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

1

2      I, ███████████████, appearing in this case as Parent 3B, declare under penalty

3  of perjury that the foregoing allegations that pertain to me are true and correct to the

4  best of my knowledge.

5

6

7      Dated: 11/6/23

1  **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2  I, ▮▮▮▮▮▮ appearing in this case as Parent 4A, declare under penalty of perjury

3  that the foregoing allegations that pertain to me are true and correct to the best of my

4  knowledge.

5

6

7  Dated: 11/6/23

Verification of Parent 4A
case no. 3:23-cv-05736-dge
page 1 of 1

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

1    **VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

2    I ███████ appearing in this case as Parent 4B, declare under penalty of perjury

3    that the foregoing allegations that pertain to me are true and correct to the best of my

4    knowledge.

5

6

7     Dated: 11/6/23

Verification of Parent 4B
case no. 3:23-cv-05736-dge
page 1 of 1

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

I, ███████, appearing in this case as Parent 5A, declare under penalty of perjury that the foregoing allegations that pertain to me are true and correct to the best of my knowledge**.**

Dated: 11/6/23

Verification of Parent 5A
case no. 3:23-cv-05736-dge
page 1 of 1

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**VERIFICATION OF FIRST AMENDED COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

I, ▮▮▮▮▮▮▮▮, appearing in this case as Parent 5A, declare under penalty of perjury that the foregoing allegations that pertain to me are true and correct to the best of my knowledge.

Dated: 11/6/23

Verification of Parent 5B
case no. 3:23-cv-05736-dge
page 1 of

Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

Judge Robert J. Bryan

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| **International Partners For Ethical Care, Inc., Advocates Protecting Children, Parents 1A, 1B, 2A, 2B, 3A, 3B, 4A, 4B, 5A, and 5B**, <br><br> Plaintiffs, <br><br> v. <br><br> **Jay Inslee**, Governor of Washington, in his official capacity; **Robert Ferguson**, Attorney General of Washington, in his official capacity; and **Ross Hunter**, Secretary of the Washington Department of Children, Youth, and Families, in his official capacity; <br><br> Defendants. | Case No. 3:23-cv-05736-RJB <br><br><br><br><br><br> **Plaintiffs' Notice of Civil Appeal** |

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

**ER-090**

1    Pursuant to 28 U.S.C. § 1291 and Rule 4(a) of the Federal Rules of Appellate

2   Procedure, notice is given that Plaintiffs International Partners for Ethical Care, Inc.,

3   Advocates Protecting Children, and Parents 1A, 1B, 2A, 2B, 3A, 3B, 4A, 4B, 5A, and 5B,

4   appeal to the U.S. Court of Appeals for the Ninth Circuit from the final Order and Judgment,

5   Docs. 50 & 51, entered May 15, 2024, which granted Defendants' Motion to Dismiss

6   Plaintiffs' Amended Complaint, with prejudice.

7    Plaintiffs also appeal from all subsidiary rulings incorporated in the Order. A copy of

8   the Judgment and Order is attached as Exhibit 1 to this notice of appeal.

Dated: June 8, 2024                              Respectfully submitted.

 /s/ Jonathan F. Mitchell                         /s/ Gene Schaerr
JONATHAN F. MITCHELL                         GENE SCHAERR*
Washington Bar No. 52483                       EDWARD H. TRENT*
Mitchell Law PLLC                               Schaerr | Jaffe LLP
111 Congress Avenue, Suite 400                  1717 K Street NW, Suite 900
Austin, Texas 78701                             Washington, DC 20006
(512) 686-3940                                  (202) 787-1060
jonathan@mitchell.law                           gschaerr@schaerr-jaffe.com
                                                etrent@schaerr-jaffe.com
NICHOLAS BARRY*
IAN PRIOR*
JAMES ROGERS*
America First Legal Foundation
611 Pennsylvania Avenue SE, No. 231
Washington, DC 20003
(206) 964-3721
reed.rubenstein@aflegal.org
nicholas.barry@aflegal.org                      * admitted *pro hac vice*
ian.prior@aflegal.org
james.rogers@aflegal.org                        *Counsel for Plaintiffs*

NOTICE OF APPEAL                                MITCHELL LAW PLLC
CASE NO. 3:23-cv-05736-DGE                       111 Congress Avenue, Suite 400
                                                Austin, Texas 78701
                                                (512) 686-3940

ER-091

## CERTIFICATE OF SERVICE

I certify that on June 8, 2024, this document was served through the Court's CM/ECF document filing system upon:

CRISTINA SEPE
MARSHA CHIEN
Deputy Solicitors General
1125 Washington Street SE
Post Office Box 40100
Olympia, Washington 98504-0100
(360) 753-6200
cristina.sepe@atg.wa.gov
marsha.chien@atg.wa.gov

ANDREW R.W. HUGHES
LAURYN K. FRAAS
Assistant Attorneys General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 464-7744
andrew.hughes@atg.gov
lauryn.fraas@atg.wa.gov

*Counsel for Defendants*

   /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*

NOTICE OF APPEAL
CASE NO. 3:23-cv-05736-DGE

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

2

ER-092

CLOSED,APPEAL

# U.S. District Court
## United States District Court for the Western District of Washington (Tacoma)
### CIVIL DOCKET FOR CASE #: 3:23-cv-05736-DGE

International Partners For Ethical Care Inc et al v. Inslee et al
Assigned to: U.S. District Judge David G Estudillo
Case in other court: 9th Circuit Court of Appeals, 24-03661
Cause: 42:1983 Civil Rights Act

Date Filed: 08/16/2023
Date Terminated: 05/15/2024
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**International Partners For Ethical Care Inc**

represented by **Edward H Trent**
SCHAERR JAFFE LLP
1717 K STREET NW STE 900
WASHINGTON, DC 20006
202-787-1060
Email: etrent@schaerr-jaffe.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
SCHAERR JAFFE LLP
1717 K STREET NW STE 900
WASHINGTON, DC 20006
202-787-1060
Fax: 202-776-0136
Email: gschaerr@schaerr-jaffe.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
AMERICA FIRST LEGAL
FOUNDATION
611 PENNSYLVANIA AVE SE #231
WASHINGTON, DC 20003
571-639-6711
Email: ian.prior@aflegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
AMERICA FIRST LEGAL
FOUNDATION
611 PENNSYLVANIA AVE SE #231

WASHINGTON, DC 20003
202-964-3721
Email: james.rogers@aflegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
AMERICA FIRST LEGAL
FOUNDATION
611 PENNSYLVANIA AVE SE #231
WASHINGTON, DC 20003
615-431-9303
Email: nicholas.barry@aflegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
ARD LAW GROUP PLLC
PO BOX 11633
BAINBRIDGE ISLAND, WA 98110
206-701-9243
Email: joel@ard.law
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
MITCHELL LAW PLLC
111 CONGRESS AVE
STE 400
AUSTIN, TX 78701
512-686-3940
Fax: 512-686-3941
Email: jonathan@mitchell.law
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Advocates Protecting Children**     represented by **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)

ER-094

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 1A**                    represented by **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)

**ER-095**

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 1B**                    represented by **Edward H Trent**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Gene Schaerr**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **James K Rogers**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Nicholas Barry**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Joel B Ard**
                                 (See above for address)
                                 *TERMINATED: 09/05/2023*

                                 **Jonathan F Mitchell**
                                 (See above for address)
                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 2A**                    represented by **Edward H Trent**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

**ER-096**

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 2B**                        represented by **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

ER-097

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 3A**                    represented by  **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

ER-098

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 3B**                    represented by    **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 4A**                    represented by **Edward H Trent**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Gene Schaerr**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Ian Prior**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **James K Rogers**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Nicholas Barry**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Joel B Ard**
                                 (See above for address)
                                 *TERMINATED: 09/05/2023*

                                 **Jonathan F Mitchell**
                                 (See above for address)
                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 4B**                    represented by **Edward H Trent**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

                                 **Gene Schaerr**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *PRO HAC VICE*
                                 *ATTORNEY TO BE NOTICED*

**ER-100**

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 5A**                    represented by **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ER-101**

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parent 5B**                    represented by **Edward H Trent**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gene Schaerr**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Prior**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James K Rogers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Barry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel B Ard**
(See above for address)
*TERMINATED: 09/05/2023*

**Jonathan F Mitchell**
(See above for address)

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Jay Inslee**
*Governor of Washington*

represented by **Andrew R W Hughes**
WASHINGTON STATE ATTORNEY
GENERAL'S OFFICE (SEA-FIFTH A
800 5TH AVE
STE 2000
SEATTLE, WA 98104-3188
Email: andrew.hughes@atg.wa.gov
*ATTORNEY TO BE NOTICED*

**Cristina Sepe**
ATTORNEY GENERAL'S OFFICE
(40100-OLY)
PO BOX 40100
1125 WASHINGTON ST SE
OLYMPIA, WA 98504-0100
360-753-7085
Email: cristina.sepe@atg.wa.gov
*ATTORNEY TO BE NOTICED*

**Lauryn K. Fraas**
ATTORNEY GENERAL'S OFFICE (800
SEATTLE)
800 FIFTH AVENUE
STE 2000
SEATTLE, WA 98104
206-521-5811
Email: lauryn.fraas@atg.wa.gov
*ATTORNEY TO BE NOTICED*

**Marsha J. Chien**
ATTORNEY GENERAL'S OFFICE
(40100-OLY)
PO BOX 40100
1125 WASHINGTON ST SE
OLYMPIA, WA 98504-0100
206-389-2406
Email: marsha.chien@atg.wa.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Ferguson**
*Attorney General of Washington*

represented by **Andrew R W Hughes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cristina Sepe**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauryn K. Fraas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marsha J. Chien**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ross Hunter**
*Secretary of the Washington Department
of Children, Youth, and Families*

represented by **Andrew R W Hughes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cristina Sepe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauryn K. Fraas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marsha J. Chien**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Legal Counsel for Youth and Children**

represented by **McKean J Evans**
RUIZ & SMART PLLC
901 FIFTH AVE
STE 820
SEATTLE, WA 98164
206-203-9100
Email: mevans@ruizandsmart.com
*ATTORNEY TO BE NOTICED*

**Isaac Ruiz**
RUIZ & SMART PLLC
901 FIFTH AVE
STE 820
SEATTLE, WA 98164
206-203-9100
Email: iruiz@ruizandsmart.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

**ER-104**

| 08/16/2023 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants (Receipt # AWAWDC-8127152) Attorney Joel B Ard added to party Parent 1A(pty:pla), Attorney Joel B Ard added to party Parent 1B(pty:pla), Attorney Joel B Ard added to party Parent 2A(pty:pla), Attorney Joel B Ard added to party Parent 2B(pty:pla), Attorney Joel B Ard added to party Parent 3A(pty:pla), Attorney Joel B Ard added to party Parent 3B(pty:pla), Attorney Joel B Ard added to party Parent 4A(pty:pla), Attorney Joel B Ard added to party Parent 4B(pty:pla), Attorney Joel B Ard added to party Advocates Protecting Children(pty:pla), Attorney Joel B Ard added to party International Partners For Ethical Care, Inc.(pty:pla) filed by Parent 2B, Parent 1A, Parent 3A, Parent 4A, Advocates Protecting Children, Parent 3B, International Partners For Ethical Care, Inc., Parent 1B, Parent 4B, Parent 2A. (Attachments: # 1 Civil Cover Sheet)(Ard, Joel) (Entered: 08/16/2023) |
| 08/16/2023 | 2 | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1(a)(1). Filed by International Partners For Ethical Care, Inc.. (Ard, Joel) (Entered: 08/16/2023) |
| 08/16/2023 | 3 | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1(a)(1). Filed by Advocates Protecting Children. (Ard, Joel) (Entered: 08/16/2023) |
| 08/16/2023 | 4 | PRAECIPE TO ISSUE SUMMONS *to all Defendants* by All Plaintiffs (Ard, Joel) (Entered: 08/16/2023) |
| 08/16/2023 | 5 | APPLICATION OF ATTORNEY Gene Schaerr FOR LEAVE TO APPEAR PRO HAC VICE for All Plaintiffs (Fee Paid) Receipt No. AWAWDC-8127194 (Ard, Joel) (Entered: 08/16/2023) |
| 08/16/2023 | | U.S. District Judge David G Estudillo added. (AMD) (Entered: 08/16/2023) |
| 08/16/2023 | 6 | Summons(es) Electronically Issued as to defendant(s) Robert Ferguson, Ross Hunter, Jay Inslee. (AMD) (Main Document 6 replaced on 8/16/2023 with correct doc) (AMD). Modified on 8/16/2023 (AMD). (Entered: 08/16/2023) |
| 08/18/2023 | 7 | ORDER re 5 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Gene Schaerr for PLAINTIFFS Parent 1A,Gene Schaerr for Parent 1B,Gene Schaerr for Parent 2A,Gene Schaerr for Parent 2B,Gene Schaerr for Parent 3A,Gene Schaerr for Parent 3B,Gene Schaerr for Parent 4A,Gene Schaerr for Parent 4B,Gene Schaerr for Advocates Protecting Children,Gene Schaerr for International Partners For Ethical Care Inc, by Clerk Ravi Subramanian. No document associated with this docket entry, text only. <br><br> *NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(MG) (Entered: 08/18/2023) |
| 08/22/2023 | 8 | NOTICE of Appearance by attorney Cristina Sepe on behalf of Defendants Robert Ferguson, Ross Hunter, Jay Inslee. (Sepe, Cristina) (Entered: 08/22/2023) |
| 08/23/2023 | | Attorney Marsha J. Chien added for Robert Ferguson, Ross Hunter, Jay Inslee; per 8 Notice of Appearance. (MW) (Entered: 08/23/2023) |
| 08/23/2023 | 9 | NOTICE of Appearance by attorney Andrew R W Hughes on behalf of Defendants Robert Ferguson, Ross Hunter, Jay Inslee. (Hughes, Andrew) (Entered: 08/23/2023) |

| | | |
|---|---|---|
| 08/24/2023 | | Attorney Lauryn K. Fraas added for Robert Ferguson, Ross Hunter, Jay Inslee; per 9 Notice of Appearance. (MW) (Entered: 08/24/2023) |
| 08/25/2023 | 10 | APPLICATION OF ATTORNEY Edward Trent FOR LEAVE TO APPEAR PRO HAC VICE for All Plaintiffs (Fee Paid) Receipt No. AWAWDC-8139758 (Ard, Joel) (Entered: 08/25/2023) |
| 08/25/2023 | 11 | ORDER re 10 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Edward H Trent for Plaintiffs Parent 1A, Parent 1B, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B, Advocates Protecting Children, and International Partners For Ethical Care Inc by Clerk Ravi Subramanian. No document associated with this docket entry, text only.<br><br>*NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 08/25/2023) |
| 08/28/2023 | 12 | ORDER REGARDING INITIAL DISCLOSURES, JOINT STATUS REPORT, DISCOVERY, DEPOSITIONS AND EARLY SETTLEMENT: FRCP 26(f) Conference Deadline is 11/13/2023, Initial Disclosure Deadline is 11/20/2023, Joint Status Report due by 11/27/2023, Scheduling Conference set for 12/8/2023 at 2:30 PM in Courtroom B before U.S. District Judge David G. Estudillo. Signed by U.S. District Judge David G. Estudillo. (MGC) (Entered: 08/28/2023) |
| 09/05/2023 | 13 | NOTICE of Appearance by attorney Jonathan F Mitchell on behalf of Plaintiffs Parent 1A, Parent 1B, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B, Advocates Protecting Children, International Partners For Ethical Care Inc. (Mitchell, Jonathan) (Entered: 09/05/2023) |
| 09/05/2023 | 14 | NOTICE OF WITHDRAWAL OF COUNSEL: Attorney Joel B Ard for All Plaintiffs. (Ard, Joel) (Entered: 09/05/2023) |
| 09/06/2023 | 15 | Stipulated MOTION *and Proposed Order Re: Briefing Schedule and Word Limits and to Extend Initial Case Schedule Order Dates*, filed by Defendants Robert Ferguson, Ross Hunter, Jay Inslee. Noting Date 9/6/2023, (Sepe, Cristina) (Entered: 09/06/2023) |
| 09/08/2023 | 16 | MOTION Leave to Proceed Under Pseudonyms , filed by Plaintiffs Parent 1A, Parent 1B, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B. (Attachments: # 1 Proposed Order) Noting Date 9/29/2023, (Mitchell, Jonathan) (Entered: 09/08/2023) |
| 09/13/2023 | 17 | ORDER re Parties' 15 Stipulated MOTION *and Proposed Order Re: Briefing Schedule and Word Limits and to Extend Initial Case Schedule Order Dates*. The following briefing schedule shall govern the resolution of Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss in this case: Plaintiffs' Motion for Preliminary Injunction due 9/15/2023; Defendants' Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction due 10/16/2023; Plaintiffs' Reply to Motion for Preliminary Injunction and Opposition to Defendants Motion to Dismiss due 11/15/2023; Defendants' Reply to Motion to Dismiss due 11/29/2023.<br>The initial case deadlines (see Dkt. No. 12 ) shall be stayed. The Court will issue a new order regarding the initial case deadlines, as necessary, after it decides the |

| | | |
|---|---|---|
| | | Defendants' motion to dismiss. Signed by U.S. District Judge David G Estudillo. (MW) (Entered: 09/13/2023) |
| 09/15/2023 | 18 | APPLICATION OF ATTORNEY Ian Pryor FOR LEAVE TO APPEAR PRO HAC VICE for All Plaintiffs (Fee Paid) Receipt No. AWAWDC-8166224 (Mitchell, Jonathan) (Entered: 09/15/2023) |
| 09/15/2023 | 19 | APPLICATION OF ATTORNEY Nicholas R. Barry FOR LEAVE TO APPEAR PRO HAC VICE for All Plaintiffs (Fee Paid) Receipt No. AWAWDC-8166242 (Mitchell, Jonathan) (Entered: 09/15/2023) |
| 09/15/2023 | 20 | NOTICE *to the Court of Plaintiffs' Decision Not to Move for Preliminary Injunction* ; filed by All Plaintiffs. (Mitchell, Jonathan) (Entered: 09/15/2023) |
| 09/17/2023 | 21 | MOTION Waive Local-Counsel Signature Requirement in Rule 83.1(d)(2) , filed by All Plaintiffs. (Attachments: # 1 Proposed Order) Noting Date 10/6/2023, (Mitchell, Jonathan) (Entered: 09/17/2023) |
| 09/18/2023 | 22 | ORDER re 19 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Nicholas Barry for PLAINTIFFS Parent 1A, Parent 1B, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B and Advocates Protecting Children by Clerk Ravi Subramanian. No document associated with this docket entry, text only.<br><br>*NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(MG) (Entered: 09/18/2023) |
| 09/19/2023 | 23 | ORDER re 18 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Ian Prior for Parent PLAINTIFFS Parent 1A, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B, Advocates Protecting Children and International Partners Ethical Care Inc by Clerk Ravi Subramanian. No document associated with this docket entry, text only.<br><br>*NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(MG) (Entered: 09/19/2023) |
| 09/19/2023 | 24 | RESPONSE, by Defendants Robert Ferguson, Ross Hunter, Jay Inslee, to 16 MOTION Leave to Proceed Under Pseudonyms . (Hughes, Andrew) (Entered: 09/19/2023) |
| 09/19/2023 | 25 | RESPONSE, by Defendants Robert Ferguson, Ross Hunter, Jay Inslee, to 21 MOTION Waive Local-Counsel Signature Requirement in Rule 83.1(d)(2) . (Hughes, Andrew) (Entered: 09/19/2023) |
| 09/22/2023 | 26 | APPLICATION OF ATTORNEY James Rogers FOR LEAVE TO APPEAR PRO HAC VICE for All Plaintiffs (Fee Paid) Receipt No. AWAWDC-8175493 (Mitchell, Jonathan) (Entered: 09/22/2023) |
| 09/22/2023 | 27 | ORDER re 26 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney James K Rogers for Plaintiffs Parent 1A, Parent 1B, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B, Advocates Protecting Children, and |

| | | |
|---|---|---|
| | | International Partners For Ethical Care Inc by Clerk Ravi Subramanian. No document associated with this docket entry, text only.<br><br>*NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 09/22/2023) |
| 09/28/2023 | 28 | REPLY, filed by All Plaintiffs, TO RESPONSE to 16 MOTION Leave to Proceed Under Pseudonyms (Mitchell, Jonathan) (Entered: 09/28/2023) |
| 10/06/2023 | 29 | REPLY, filed by All Plaintiffs, TO RESPONSE to 21 MOTION Waive Local-Counsel Signature Requirement in Rule 83.1(d)(2) (Mitchell, Jonathan) (Entered: 10/06/2023) |
| 10/16/2023 | 30 | MOTION to Dismiss , filed by Defendants Robert Ferguson, Ross Hunter, Jay Inslee. (Attachments: # 1 Proposed Order) Noting Date 11/29/2023, (Sepe, Cristina) (Entered: 10/16/2023) |
| 10/16/2023 | 31 | DECLARATION of Cristina Sepe in Support of Defendants' Motion to Dismiss filed by Defendants Robert Ferguson, Ross Hunter, Jay Inslee re 30 MOTION to Dismiss (Attachments: # 1 Exhibit A-E)(Sepe, Cristina) (Entered: 10/16/2023) |
| 10/25/2023 | 32 | ORDER granting Plaintiffs' 16 MOTION to Proceed Under Pseudonyms. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: 10/25/2023) |
| 10/25/2023 | 33 | ORDER denying Plaintiff's 21 Motion to Waive Local Counsel Signature Requirement. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: 10/25/2023) |
| 11/06/2023 | 34 | AMENDED COMPLAINT against defendant(s) Jay Inslee, Robert Ferguson, Ross Hunter filed by Parent 2B, Parent 1A, Parent 3A, Parent 4A, Advocates Protecting Children, Parent 3B, International Partners For Ethical Care Inc, Parent 1B, Parent 4B, Parent 2A. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(Mitchell, Jonathan) (Entered: 11/06/2023) |
| 11/13/2023 | 35 | Joint Stipulated MOTION *and [Proposed] Order to Set Briefing Schedule and Word Limits*, filed by Defendants Robert Ferguson, Ross Hunter, Jay Inslee. Noting Date 11/13/2023, (Sepe, Cristina) (Entered: 11/13/2023) |
| 11/15/2023 | 36 | ORDER granting Parties' 35 Joint Stipulated MOTION *to Set Briefing Schedule and Word Limits*. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: 11/15/2023) |
| 12/15/2023 | 37 | MOTION to Dismiss *First Amended Complaint*, filed by All Defendants. (Attachments: # 1 Appendix - Statutes, # 2 Proposed Order) Noting Date 2/2/2024, (Sepe, Cristina) (Entered: 12/15/2023) |
| 12/15/2023 | 38 | DECLARATION of Cristina Sepe in Support of Defendants' Motion to Dismiss First Amended Complaint filed by All Defendants re 37 MOTION to Dismiss *First Amended Complaint* (Attachments: # 1 Exhibit A-H)(Sepe, Cristina) (Entered: 12/15/2023) |
| 01/18/2024 | 39 | NOTICE of Appearance by attorney Isaac Ruiz on behalf of Amicus Legal Counsel for Youth and Children. (Ruiz, Isaac) (Entered: 01/18/2024) |

| | | |
|---|---|---|
| 01/18/2024 | 40 | NOTICE of Appearance by attorney McKean J Evans on behalf of Amicus Legal Counsel for Youth and Children. (Evans, McKean) (Entered: 01/18/2024) |
| 01/18/2024 | 41 | MOTION for Leave *of Legal Counsel for Youth and Children to Appear as Amicus Curiae*, filed by Amicus Legal Counsel for Youth and Children. (Attachments: # 1 Proposed Order) Noting Date 2/2/2024, (Evans, McKean) (Entered: 01/18/2024) |
| 01/18/2024 | 42 | DECLARATION of Erin L. Lovell filed by Amicus Legal Counsel for Youth and Children re 41 MOTION for Leave *of Legal Counsel for Youth and Children to Appear as Amicus Curiae* (Attachments: # 1 Exhibit A, # 2 Complaint B)(Evans, McKean) (Entered: 01/18/2024) |
| 01/19/2024 | 43 | RESPONSE, by All Plaintiffs, to 37 MOTION to Dismiss *First Amended Complaint*. (Attachments: # 1 Proposed Order)(Mitchell, Jonathan) (Entered: 01/19/2024) |
| 02/02/2024 | 44 | REPLY, filed by Amicus Legal Counsel for Youth and Children, TO RESPONSE to 41 MOTION for Leave *of Legal Counsel for Youth and Children to Appear as Amicus Curiae* (Evans, McKean) (Entered: 02/02/2024) |
| 02/02/2024 | 45 | REPLY, filed by Defendants Robert Ferguson, Ross Hunter, Jay Inslee, TO RESPONSE to 37 MOTION to Dismiss *First Amended Complaint* (Sepe, Cristina) (Entered: 02/02/2024) |
| 02/05/2024 | 46 | MINUTE ORDER entered at the direction of U.S. District Judge David G. Estudillo: Plaintiffs' Amended Complaint (Dkt. 34 ) renders the original complaint (Dkt. 1 ) in this case without legal effect. Thus, the Court STRIKES Defendants' 30 MOTION to Dismiss as MOOT. (MGC) (Entered: 02/05/2024) |
| 02/05/2024 | 47 | ORDER granting Legal Counsel for Youth and Children's 41 Motion for Leave to Appear as Amicus Curiae. LCYC SHALL be permitted to proceed as Amicus Curiae and may file its amicus brief. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: 02/05/2024) |
| 02/05/2024 | 48 | BRIEF re 47 Order on Motion for Leave, 37 MOTION to Dismiss *First Amended Complaint of Amicus Curiae Legal Counsel for Youth and Children in Support of Defendants' Motion to Dismiss First Amended Complaint* by Amicus Legal Counsel for Youth and Children (Evans, McKean) (Entered: 02/05/2024) |
| 05/14/2024 | 49 | MINUTE ORDER. This case is reassigned to United States Judge Robert J. Bryan for the purposes of considering all pending motions. Authorized by U.S. District Judge David G Estudillo. (MW) (Entered: 05/14/2024) |
| 05/15/2024 | 50 | ORDER granting 37 Motion to Dismiss First Amended Complaint. Signed by Judge Robert J. Bryan. (JL) (Entered: 05/15/2024) |
| 05/15/2024 | 51 | JUDGMENT BY COURT. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED. This case is hereby DISMISSED WITH PREJUDICE (CJS) (Entered: 05/15/2024) |
| 06/08/2024 | 52 | NOTICE OF APPEAL (24-3661) to Ninth Circuit re 51 Judgment by Court, 50 Order on Motion to Dismiss by Plaintiffs Parent 1A, Parent 1B, Parent 2A, Parent 2B, Parent 3A, Parent 3B, Parent 4A, Parent 4B, Advocates Protecting Children, International Partners For Ethical Care Inc, Parent 5A, Parent 5B. $605, receipt number AWAWDC-8499203 (cc: USCA) (Attachments: # 1 Exhibit)(Mitchell, Jonathan) Modified to add CCA # on 6/13/2024 (MW). (Entered: 06/08/2024) |

| 06/10/2024 | 53 | EXHIBIT *(Notice of Representation)* re 52 Notice of Appeal, by All Plaintiffs (Mitchell, Jonathan) Modified on 6/11/2024 - Regenerated NEF to USCA 9th Circuit (CJS). (Entered: 06/10/2024) |
|---|---|---|
| 06/10/2024 | 54 | MINUTE ORDER TERMINATING REASSIGNMENT OF PENDING MOTIONS. The reassignment of pending motions in this case to Judge Robert J. Bryan is terminated. Authorized by U.S. District Judge David G Estudillo. (CJS) (Entered: 06/10/2024) |
| 06/11/2024 | 55 | TIME SCHEDULE ORDER/USCA CASE NUMBER 24-3661 as to 52 Notice of Appeal, filed by Parent 4B, Parent 4A, Parent 3A, Parent 3B, Parent 2B, Parent 2A, Parent 1B, Parent 1A, Parent 5A, Parent 5B, International Partners For Ethical Care Inc, Advocates Protecting Children. (MW) (Entered: 06/13/2024) |
| 06/17/2024 | 56 | TRANSCRIPT DESIGNATION (#24-3661) by All Plaintiffs. Requesting Attorney: Jonathan F Mitchell. (Mitchell, Jonathan) (Entered: 06/17/2024) |